ST. PAUL, J.
 

 This is a suit for damages for breach of contract, coupled with a prayer to have a certain sale of property by defendant declared a simulation, or at least a fraudulent conveyance.
 

 I.
 

 On September 24, 1920, defendant bought of plaintiff 1,000 barrels of flour, “guaranteed as per sample submitted,” for delivery at “buyer’s option” on or before March 13, 1921.
 

 Defendant refused to call for or receive the' flour, and plaintiff sues to recover the difference between the purchase price ($11.25 per barrel) and the market price on March 31,. 1921 ($8.45 per barrel) amounting to $2.80 per barrel, of $2,800 on the lot.
 

 Defendant sought, and was allowed, over plaintiff’s objection, to offer parol evidence to show that the flour was not purchased upon samples submitted, hut upon samples thereafter to .be submitted and tested by
 
 him;
 
 the sale to depend upon whether said samples should prove satisfactory to defendant; in other words, that the sale was not outright, but conditional only.
 

 As the transaction was consummated entirely in writing and purports to be an outright sale of 1,000 barrels of flour as per sample submitted, it was error to admit parol evidence to contradict the writing and show that the' sale was qnly conditional upon defendants’ subsequent approval of’ samples thereafter to be furnished.
 

 Defendant argues that the contract was a mere gambling upon market quotations., because it reserved to plaintiff,
 
 in addition
 
 to the right to enforce the contract by tendering the goods and suing for the full price, the right
 
 also
 
 to claim of defendant, in case of the latter’s refusal or failure to accept delivery. the difference between the contract price and the market price at the time and place for delivery.
 

 There is no merit in this contention. “The general rule Is that the measure of .damages when the buyer repudiates the contract and refuses to receive and accept the goods is the difference between the contract price and the
 
 *701
 
 market value of the goods at the time ^ and place of delivery.” 35 Cyc. 592; 12 Ruling Case Law, 86; Milam-Morgan Co. v. Atlantic Fruit Co., 12 Orleans App. 306, 311, and authorities there cited. And, such being the general rule of law, the insertion thereof in the contract could not possibly serve to nullify it, since it added nothing thereto which was not already written into it by mere operation of law.
 

 Stanard Milling Co. v. Flower, 46 La. Ann. 315, 15 So. 16, has not the least application here. In that case, “all parties clearly understood it [the contract sued upon] to be a wagering, speculating future contract in which an actual delivery of the flour was not contemplated under any contingency. * * * [For] it will be noticed that under no contingency was the milling company to have the right of delivery. * * *” Pages 321, 322 (15 So. 19). And defendant was not even a dealer in flour, “either by wholesale or retail.”
 

 On the other hand, in the case before us, all parties clearly understood that the contract was a bona fide sale of flour between plaintiff, a manufacturer and wholesale dealer in flour, and defendant, a manufacturer of macaroni, which is made of flour. And it will be noticed that plaintiff expressly stipulated for the right of delivery. Hence the two cases differ entirely.
 

 Our conclusion .is that the judgment below on this branch of the case was error, and that plaintiff should have judgment against the defendant Riccobono for the amount claimed as damages. ,
 

 II.
 

 On the other hand, we do not think that the evidence justifies a finding that the sale of his property by defendant was either simulated or fraudulent. It is true that the sale was made to his brother-in-law (his wife’s sister’s husband), who paid him only $50 cash on an agreed purchase-price of $5,650. But for the balance he assumed a first mortgage thereon of $3,000, and gave the vendor (defendant) a further mortgage thereon for $2,-600, which the vendor (defendant) apparently still holds. And there is nothing in this record to show that the property sold was worth more than the price paid, other than that defendant first asked his brother-in-law $8,000 or $8,500 therefor, which the brother-in-law refused to give. Nor is there anything in this record to show that his said brother-in-law was not in good faith, i. e., that he had any reason to believe that defendant was seeking to put his property beyond the reach of his creditors, or had other intention than to purchase the property for a price he was willing to pay.
 

 Under such circumstances the sale cannot be annulled, unless by showing that the property was worth at least 20 per cent, (one-fifth) more than the price stipulated, and restoring to the purchaser what he has given the debt- or (in this case $50 cash,- the mortgage note of $2,600 or its equivalent, and whatever may have been paid on account of the first mortgage). R. O. O. arts. 1979, 1981. And, as we have said, the evidence does not suffice to show that the property sold was worth one-fifth above the $5,650 stipulated as the price thereof.
 

 Our conclusion is that the judgment below correctly rejected plaintiffs’ demand to have the sale annulled.
 

 Decree.
 

 The judgment appealed from is therefore reversed in so far as it rejects plaintiff’s demand for damages for breach of contract, and it is now ordered that plaintiff, Wash-burn Orosby Company, have judgment against defendant Antonio Riccobono, for the full sum of $2,800, with legal interest from judicial demand until paid, and all costs of both courts; and it is further ordered that said judgment be affirmed in so far as it rejects
 
 *703
 
 plaintiff's demand to annul the sale of property by Antonio Riccobono to Joseph Dimaggio and wife, passed before Theodore Cotonio, notary public, on November 11, 1920.