162 So. 70

**CITY OF GRETNA v. BROOKLYN LAND CO.**

No. 33237.

April 29, 1935.

F. S. Weis, of New Orleans, for appellant.

John E. Fleury and Andrew H. Thalheim, both of Gretna, for appellee.

ODOM, Justice.

The city of Gretna has recently added a filtration plant to its waterworks system, at an expense of approximately $286,000. For the purpose of raising funds with which to construct this filtration plant, the city issued bonds for $210,000, maturing over a period of 35 years, and sold them to the United States government, which made an outright donation of $76,000.

The filtration plant is built on a square of ground which is some four or five blocks from the Mississippi river, which is the city's only source of water supply. In order to obtain the water supply, it became necessary to lay intake pipes to the river and to erect pumps at or near the river bank, and for this purpose it brought expropriation proceedings to acquire fee title to about ⅛ of an acre of land belonging to defendant, together with the alluvium and batture in front of said land and all riparian rights of every nature whatsoever.

The city had endeavored to obtain title to this land by convention, and, failing to do so, it brought the present proceeding to acquire the land by expropriation. The defendant landowner resisted the city's demands on the grounds: (1) That the land was not necessary for the city's purposes; (2) that it was not necessary that the city acquire the land in fee, but that a servitude only was sufficient; (3) that the amount of land sought by the city was excessive; and (4) that the defendant's land was not suitable for the location of the pumps because of possible contamination of the water.

The case was tried by a jury of freeholders and there was verdict for the city condemning the property and fixing the value of the land at $500 and the damages to the adjoining property at $250. From this verdict, and a judgment approving it, the defendant appealed.

Disposing of defendant's contentions in the order stated above, we find that the allegations of the city that this particular property was necessary for its purposes are amply supported by the testimony. The city engineers testified that they had surveyed the entire river front, and that the property now sought by the city was selected by them as the only property which

could be found that would subserve the purposes for which it was wanted. They testified that other locations for the pumps and the intake pipes suggested by the defendant for such purposes could not be used for various reasons, all of which they explained in detail, and which seem to us entirely reasonable. The theory of defendant is that inasmuch as the city of Gretna owns the streets, some of which run to the river, it could lay its pipe line under these streets and erect its pumps near the river bank on property which it owned, and that inasmuch as the city owned property which it could conveniently use, it should not be permitted to expropriate private property for these purposes. But the testimony of the engineers and others shows clearly that the suggestions made by defendant cannot be approved. The filtration plant is located near Fried street, which defendant contended might be used by the city. But the testimony of the engineers shows that the city would encounter "engineering impossibilities" in attempting to use this street. Amelia avenue was also suggested by defendant, but the testimony shows that it does not reach the river, as it was closed at Front street, and that the American Industrial Alcohol Company has a large plant across what would be Amelia avenue if it were projected to the river. Lafayette avenue was also suggested, but, according to the engineers, the point at which this avenue intersects the river cannot be used for the pumps for the reason that within recent years the river bank there has caved

to a considerable extent, and it is anticipated that caving may take place there at almost any time. Another street suggested intersects the river where there is a wharf owned by a railroad company, and in order to reach the river the pipes would have to be laid under this wharf or warehouse and the pumps put into the river underneath this structure.

The testimony shows that the city could reach the river at places other than that which was selected by the engineers but that to do so would entail an expense of some thirty or forty thousand dollars more than it would take to extend the pipes along the route which it selected.

The members of the jury visited personally the various properties suggested and correctly concluded that it was necessary for the city to acquire this particular property. Evidently the trial judge thought so, as he approved the verdict.

The second contention of defendant is that it was not necessary for the city to acquire this property in fee, but that a servitude over the same was all that was necessary. There is no merit in this contention. The waterworks plant and all its accessories were built by the city to be used in perpetuity, and it would be unwise for it to lay its pipe lines and erect its pumps on property which belonged to another. Especially is this true in view of the fact that defendant, in case a servitude only was acquired, demanded the right to change the location of the pipe lines as well as the pumps in case it saw fit to use the proper-

ty for its own purposes at a later date. The city cannot afford to have its intake pipes and its pumps interfered with, and for that reason it has a right to acquire the property in fee. New Orleans Pac. Ry. Co. v. Gay, 32 La. Ann. 471.

■ As to the defendant's third contention, that is, that the amount of land sought by the city is excessive, our conclusion is that all the property sought to be acquired is necessary. The testimony shows that a strip of only 15 or 20 feet extending to the river is all that is necessary for the pipes and the pumps. It is also shown, however, that the 50-foot strip which the city seeks is on the edge of defendant's property and adjacent to the wharf or warehouse built on the river front, and that if the pumps were erected within a distance of 30 feet from this wharf, it would be necessary for the city to erect a fire wall between the warehouse and the pumps. This would entail considerable expense, and in order to avoid such expense, it is necessary that a space be left between the pumps and the warehouse of at least 30 feet. As the defendant owns river frontage of 1,500 feet, it is not shown that the taking of this 50-foot strip will seriously injure or inconvenience it.

■ As to defendant's contention that the land was not suitable for the location of the pumps because of possible contamination of the water, it needs only be said that that is a matter with which the defendant need not concern itself.

■ The amount of the award was $500 for the property itself and $250 damages. Defendant contends that it should have been awarded $3,125, which was the value placed upon it by Mr. Latter, a real estate man. Mr. Latter's estimate was purely theoretical and speculative. There is no testimony in the record that the property has any great commercial value at this time. Mr. Latter and others stated that at some future time the river front at this particular point might be very valuable for wharves and warehouses. That may be true, but it is also true that at the present time there is no demand for this property for such purposes. It was shown that a three-acre tract of land fronting the river near the new railroad and traffic bridge, which is about seven miles above this property, was recently sold for $1,500. Deeds were offered in evidence showing values of property situated some distance from that sought by the city. But the property involved was not of the same character as this, and therefore such values form no criterion for fixing the value in this case. The members of the jury personally viewed the property. They were all freeholders, and it is assumed that each of them had some personal knowledge of real estate values. Jurors in expropriation proceedings are clothed to some extent with the character and authority of experts. In fixing values, they may exercise in part at least their independent judgment. Their verdicts as to the value of the property to be taken are entitled to respect, and unless the

testimony shows that their estimates are manifestly erroneous, they should be accepted by appellate courts. This view was expressed by our predecessors many years ago, as will be shown by reading the cases cited in City of Shreveport v. Herndon, 173 La. 144, 136 So. 297.

The testimony in this case as a whole shows that the jury was liberal enough in its awards.

The judgment is affirmed.