68 So.2d 901

GREATER BATON ROUGE PORT COMMISSION

v.

WATSON et al.

No. 41460.

Nov. 9, 1953.

Rehearing Denied Dec. 14, 1953.

■■■■■■■■■■■■■■

Watson, Blanche, Fridge, Wilson, Posner & Thibaut, Baton Rouge, for defendants-appellants.

Hynes & Mathews, Benton & Moseley, Durrett & Hardin, Baton Rouge, for plaintiff-appellee.

PONDER, Justice.

This is an appeal from a judgment expropriating 52.7 acres of land belonging to the defendants and fixing the compensation to be paid to the defendants at the rate of $569 per acre.

The plaintiff, Greater Baton Rouge Port Commission, brought suit against the defendants, Warren O. Watson, Herbert W. Wimberly, and Mrs. Joanna Glassell Wood, to expropriate a tract of land containing 52.7 acres situated in the Town of Port Allen, Parish of West Baton Rouge. The land was owned by the defendants in the proportion of one-third each. Some time after the institution of the suit, the defendant, Mrs. Joanna Glassell Wood, sold her one-third interest in the property to the plaintiff for the sum of $10,000 wherein she reserved the mineral rights and the suit was dismissed as to her.

The plaintiff is an Executive Department of the State of Louisiana created by Section 29 of Article 6 of the Constitution of Louisiana, as amended. The right to expropriate was given to the Commission under Section 6 of Act 10 of 1952, LSA–R.S. 34:-1226, in accordance with the Expropriation Law of the State of Louisiana and the plaintiff is given the right to expropriate "properties necessary for the benefit and advantage of the commerce of the said commission." These laws were passed in furtherance of establishing a Port at or near Baton Rouge.

The appellants contend that the trial court erred in holding that the plaintiff required the full extent of the land of appellants, particularly since it is proposed by the plaintiff that the greater portion of the depth of defendants' land would be utilized for such installations as grain elevators, rock crushing plants, processing plants, specialized warehousing facilities, and other similar installations which might be leased and operated by private enterprise as sources of revenue to the Port Commission.

■■■■■ The extent of property to be expropriated and location thereof are within the sound discretion of the body possessing the power of eminent domain, and the determination of same will not be interfered with by the courts if made in good faith. Board of Levee Commissioners, Orleans Levee District v. Jackson Estate, 113 La. 124, 36 So. 912; Fuselier v. Police Jury of the Parish of Iberia, 109 La. 551, 552, 33 So. 597; City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675; City of Gretna v. Brooklyn Land Co., 182 La. 543, 162 So. 70; Board of Commissioners of Tensas Basin Levee District v. Franklin, 219 La. 859, 54 So.2d 125. It was said in

City of Westwego **v.** Marrero Land & Improvement Association, 221 La. 564, 568, 59 So.2d 885, 886, that "While the expediency or necessity of an expropriation is a matter for judicial determination (citing cases) nevertheless, the suitability of the property sought to be expropriated for the purpose as stated is primarily a question of fact, on which the judgment of the district court will not be disturbed unless manifestly erroneous, and particularly when that judgment has constituted an affirmation of the determination of the expropriating authority, arrived at after due, impartial consideration."

The second contention made by the appellant is that the right adjudicated by the court to the plaintiff should be limited to a servitude.

The trial judge correctly found that because of the purpose for expropriation in the present suit ownership of the fee title was necessary. A public body possessed of the power of eminent domain has the right to acquire property in fee title where public improvements to be erected thereon are permanent in nature and are to be used in perpetuity. New Orleans Pacific Railway Co. v. Gay, 32 La.Ann. 471; City of Gretna v. Brooklyn Land Co., 182 La. 543, 162 So. 70.

We have examined the reasons given by the trial judge for fixing the value of the property and find that he has painstakingly discussed the evidence and ar-

rived at the correct conclusion in fixing the value in the amount of $569 per acre and we adopt his portion of the opinion regarding the value of the property as our opinion, viz.:

" * * * In her deposition Mrs. Joanna G. Wood stated that she discussed the matter of selling her property in Port Allen to the Great Baton Rouge Port Commission with her husband Addison O. Wood and that he handled that transaction for her with her full knowledge and consent. The husband, Addison O. Wood, testified that after discussing differences existing as to the value of the batture and deductions of road right-of-way, and after consultations with Lewis Gottlieb and others, the sale of his wife's one-third interest of the property involved in this case was consummated with the Greater Baton Rouge Port Commission for $10,000.00, and that he felt that the said *'price of $10,000.00 for Mrs. Wood's one-third interest was a fair market value for that property.'* And on cross-examination by counsel for plaintiff, the said Addison O. Wood gave the following depositions as shown on pages 13 and 14 of notarial transcript of same:

" 'Q. As I understand it your purpose in going to see Mr. Gottlieb *was to obtain advice as to the fair market value for Mrs. Wood's interest,* is that correct? A. *That's correct,* yes, sir, Lewis Gottlieb is an old friend. I have known him for twenty years, and he certainly ought to know the values in and around Baton Rouge, *and I*

*relied a great deal on what he had to say about it.*

"The Greater Baton Rouge Port Commission now presently owns an undivided one-third (⅓) of the above described property involved in this case and defendants Herbert W. Wimberly and Warren O. Watson are the co-owners to the extent of one-third (⅓) each of the remainder of this property. The said two-thirds (⅔) interest was acquired by said Wimberly from Alfred *Glassel* on July 13, 1946 for $9962.33 and Wimberly sold one-half of said two-thirds of said property on July 9, 1947 to Warren O. Watson for $4981.33. And according to certificates filed in the record, for the year 1952 Herbert W. Wimberly and Warren O. Watson were separately and identically assessed and paid taxes on their individual interest in said property, as follows:

" 'Undivided 1/3 of 48 acres fronting on Miss. River E. by Miss. River, S. by C. P. Blake, W. and W. by Oaks Sub. Town of Port Allen
16 acres Class A $800.00
Total taxes $31.80—on assessment rolls for 1952.'

"Obviously, said assessment indicates a recognition of the fact that, while said property is mentioned above as a tract containing 52.7 acres, as to acreage and value it includes the following component parts:

12.19 acres in batture.
5.95 acres in the levee.

1.33 acres in the road adjoining the levee (or so-called river road)

31.92 acres between the east side of the Port Allen-Plaquemine Highway and the West side of river road right-of-way.

1.03 acres Port Allen-Plaquemine Highway right-of-way.

0.28 acres west of the west side of the Port Allen-Plaquemine Highway.

Total 52.70 acres (See testimony of Russell Doiron P. 395 of Transcript).

"And it is common knowledge that the said batture during the high water stage of the Mississippi River is under water. (Testimony of Amiss P. 352 of Transcript).

"Appraisals of said property were made for the purpose of this trial by persons engaged in the real estate business as follows:

E. L. Bernard $500.00 per acre for Industrial purposes.
C. J. Brown $550.00 per acre for Industrial purposes.
Bradley Mittendorph $550.00 per acre for Industrial purposes.

Russell Doiron $2250.00 per acre for Industrial purposes.
James T. Amiss $2000 per acre for Industrial purposes.
Warren Munson $1732.50 per acre for residential purposes and testified that he could sell said property for $2500.00 per acre for Industrial purposes.

The testimony of Warren Munson, who conducts a real estate business in East Baton Rouge Parish, consists chiefly of his presenting and explaining a theoretical plan prepared for use by him as a witness to be called by defendants on the trial of this case in explaining his valuation of the property in question of $91,300.00 or $1732.-50 per acre for residential purposes and how a subdivision or developer at that purchase price would make a net profit of $90,500.00 over and above the said land price of $91,300.00. This theory would obviously be untenable and unsuccessful under other testimony given by this witness to the effect that *the possibility of the location of the Port here will greatly reduce the value of residential property in this area.* (Transcript Munson pp. 269–270.) The said deduction made by the court is merely a reference to the inconsistency in said testimony and is not to be construed as an acceptance by the court of the theory that the establishing of the Port will reduce the value of residential property. And while this witness testified without explanation that he could sell this property for industrial purposes at $2500.00 per acre, yet. we find that *the only transaction* with industrial property which he has on the West side of the Mississippi River is the sale from Verdie Pierce Blake to Ashland Oil and Refining Co., of 87.87 acres in West Baton Rouge Parish located just south of the limits of the Town of Port Allen in December, 1951 for $45,000.00 *or for approximately $512.00 per acre.*

"Russell Doiron, called as a witness by defendants, testified that he would not give much weight to real estate transactions on the east bank of the river in the fixing of the market value of property located on the west bank of the river, and that '................ the value on the east bank would be greater.' (Doiron transcript p. 409 and p. 422.) And in this connection the court has noted the following testimony of Mr. Doiron:

"1. Transcript p. 415: 'By the witness:—My point is, if I may say, Your Honor, that a study of the sales that I made indicated *no sales of comparable property* with *two possible exceptions* which I referred to within my report, and that I am getting to now * * * but my study of the sales that have been involved, *with two possible exceptions, were not comparable properties,* and *I use that as one of my approaches to an estimate of market value of the property.*'

"2. Transcript p. 416: '*Q. What were the sales* of property, that you would regard as industrial property that you considered in reaching your conclusions? A. Those are the two sales that I have already referred to—maybe I didn't—*but one was the sale of Verdie Blake to Ashland Oil Company, and the other was the sale from Hewes to Gottlieb et al.'*

"In other words, as indicated by the above quoted testimony, Russell Doiron stated that he recognized as the only com-

parable property to the property involved in this case the following two properties:

(1) The property in West Baton Rouge Parish sold by Verdie Pierce Blake to Ashland Oil and Refining Company in December, 1951 *for $512.-00 per acre* as hereinabove mentioned.

(2) The property in West Baton Rouge Parish sold by Hewes T. Hewes to Lewis Gottlieb et al. on July 9, 1952 containing 44.83 acres for $24,656 or *$550.00 per acre.*

"Another witness called by defendants, James T. Amiss testified that he had never purchased for any of his clients property on the west side of the Mississippi River, that his valuation of $2000.00 is based on sales made on the east side of the river, that he doesn't know of any west side sale that went for as high as $2000.00 per acre, that he read in the papers about the so-called Ashland and Gottlieb sales mentioned above which had sale prices of $512.00 and $550.00 per acre, respectively, and that there are no industrial plants in West Baton Rouge except sugar plants. (Amiss, transcript pp: 330–363).

"And on page 9 of their brief counsel for defendants concede the point that property values on the said east bank are considerably higher than on the said west bank of the Mississippi River, as shown by the following quoted portion of said brief:

" 'If the subject property were *located on the east bank rather than west bank,* there can be no question but *that it would be considerably higher simply by virtue of the fact that it would be on the more highly developed side of the river and in an established industrial section.* * * *'

\* \* \* \* \* \*

"A careful consideration of the component parts constituting the 52.7 acres involved herein, as pointed out above, of all the evidence in this case and the law applicable thereto, all point to the conclusion that the price of $10,000.00 cash paid on April 9, 1953 by the Greater Baton Rouge Port Commission to Mrs. Joanna Glassell Wood for her undivided ⅓ interest in the property involved herein with retention of mineral rights by her as specified in the act of sale, was considered by said parties to be an equitable and fair market of said undivided ⅓ interest in said property. And the proposition now is what price is just and adequate and constitutes the equitable market value to be paid herein to defendant Herbert W. Wimberly for his undivided ⅓ of said property with retention of mineral rights therein, and what price is adequate and just and constitutes the equitable value to be paid herein to defendant Warren O. Watson for his undivided ⅓ interest in said property with retention of mineral rights therein. From the evidence in this case it appears that a fair and equitable *market value for the whole of said property* with retention of mineral rights by the present owners would be the total sum of $30,000.00 (or $569.00 per acre), or the sum and amount of $10,000.00 to Her-

bert W. Wimberly for his undivided one-third interest and the sum and amount of $10,000.00 to Warren O. Watson for his undivided one-third interest in said property.

"The following authorities are pertinent:

"(1) City of Westwego v. Marrero Land & Improvement Ass'n Ltd., 221 La. 564, 59 So.2d 885:

"1. Expropriation: In expropriation suit instituted by the city for a certain parcel of land on which to erect a water tower, *where city established a necessity for the expropriation,* record owner of the land and claimants under an agreement to purchase land *had no standing to contest the suitability* of the site chosen.

"(2) The general rules laid down by the courts in construing 'value' are briefly set forth in the case of State v. Dowling, 1944, 205 La. 1061, 1065, 18 So.2d 616, where the Supreme Court said:

" 'When private property is expropriated for public purposes the owner is entitled to its market value at the time it is taken which is its fair value between one who wants to purchase and one who wants to sell under usual and ordinary circumstances.'

"(3) In order to establish value of property to be taken, the Supreme Court in City of New Orleans v. Noto, 1950, 217 La. 657, 658, 47 So.2d 36, held that evidence of numerous sales of neighboring property 'is perhaps the best criterion of the value. * * *'

"(4) Again it is the general rule that 'the assessed value of property may be considered as a factor in determining the true value of the right of way but it is not controlling.' State v. Barbe, 1946, 209 La. 185, 24 So.2d 372.

"(5) State v. Landry, 219 La. 456, 53 So.2d 232:

" 'Courts will take judicial notice that values of all kinds of property have increased materially in the past few years prior to 1951.'

"(6) Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295.

" 'Expropriation: Where there is no market value for property sought to be expropriated, the intrinsic value for property sought to be expropriated, the intrinsic value or its value to the owner must be taken into consideration in order that owner shall not be deprived of his property without just and reasonable compensation.'

"(7) Plaquemines Parish School Board v. Miller, 222 La. 584, 589, 63 So.2d 6.

" 'There are no buildings or other improvements on the part of defendant's property needed for the school site *and its principal value,* besides that as a tract of land situated where it is, lies in its adaptability to the planting and cultivating of orange and other citrus trees. *Defendant contends however that because of its loca-*

*tion* in close proximity to a fast growing community, *it is also adaptable to home building sites and as such could be developed into a profitable subdivision.'*

" '*Whilst the fact* that a piece of property *may*, at some time *become available for residential subdivision purposes, can be taken into consideration in fixing its market value in expropriation proceedings, it should be made to appear that there is some reasonable expectation that it might be so developed in the not too distant* future. It will not do for the owner to say that at some indefinite time it is foreseeable that this property, because it adjoins a growing town, will have an added value as a subdivision project. A situation like that presents only a possibility of such use, and in Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1, it is stated that the *"possibility"* that land to be expropriated might sometime be sought for a particular purpose, *was too remote to be considered as an element in determining its value. Here there is no suggestion coming from the defendant that he has ever contemplated dividing* any of his property into building lots and spending the money involved in such an enterprise and for the court to arrive at a value on that basis it would be necessary to indulge largely in speculation which, of course, it cannot and will not do.'

"(8) R.S. 19:

"Par. 9: Measure of compensation. In estimating the value of the property to be expropriated, *the basis of assessment shall be the value which the property possessed before the contemplated improvement was proposed,* without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work."

█ Since the appeal has been lodged in this court, the appellants have moved to remand the case alleging that the plaintiff has recently secured an option to purchase a site of land containing 394.83 acres on the east bank of the river and that since the testimony shows that an integrated port is contemplated with all of the facilities contained in one area that there is no need and no right to expropriate their lands. It is further alleged therein that the Commission does not have sufficient funds to pay for the lands upon which they have secured the option and at the same time pay for the appellants' (defendants) and neighboring lands which go to make up the 300 acre tract on the west bank of the river.

The plaintiff has shown the necessity for the expropriation, and the ability of the commission to pay for the lands is of no importance at this time. We cannot assume that the plaintiff will default in their payment for the expropriated lands. Furthermore, we are in no position to say that the land upon which the option was obtained is not also necessary. Insofar as the record in this case is concerned the evidence shows that the land sought to be expropriated is necessary. It could serve no

useful purpose to remand the case for the purpose of showing the necessity of acquiring additional lands in order to establish an integrated port.

For the reasons assigned, the motion to remand is denied and the judgment is affirmed at appellants' cost.