96 So.2d 560

## HOUSING AUTHORITY OF NEW ORLEANS

v.

## George WATERS et al.

No. 41036.

June 10, 1957.

William J. Guste, James M. Colomb, Jr., Roy F. Guste, New Orleans, for plaintiff-appellant.

Andrew G. Bucaro, New Orleans, for defendant-appellee.

HAMLIN, Justice ad hoc.

Acting under LSA–Revised Statutes 40:-381 et seq., the Housing Authority of New Orleans brought these proceedings for the expropriation of two certain lots with all the buildings and improvements situated thereon, located in the First District of the City of New Orleans, bounded by Erato, Thalia, S. Dorgenois, and S. Rocheblave Streets.

Answering plaintiff's petition, the defendant, George Waters, averred that the consideration offered was inadequate and inequitable and prayed for judgment of $35,000 in his favor.

From a judgment condemning the property to the Housing Authority of New Orleans and awarding $22,429.84 to the defendant, George Waters, plaintiff appealed as to the monetary award, alleging that it is excessive and contrary to the law and the evidence.

Plaintiff contends that the judgment should be reduced to $18,533, which reflects the fair market value of the property. The defendant, George Waters, prays for affirmance of the judgment.

The property herein involved, measuring 60' front by a depth of 112' 9" was purchased in 1921 and 1924 by the defendant, George Waters. During the ensuing years he built the improvements located thereon, consisting of two double houses designated as 3831–33 and 3835–37 Thalia Street and a four-tenant tenement structure in the rear. We find the following description of these improvements by one of the experts for plaintiff to be correct:

3831–33 Thalia Street

"* * * a double camel-back, weatherboards on studs, with wood ceiling on the interior papered over, containing a total of ten rooms, brick pier,—concrete block and brick pier foundation; has gas outlets and two chimneys, electricity, two tubs, two toilets, two laundry trays and two sinks."

### 3835–37 Thalia Street

"* * * a double frame dwelling weatherboards and studs, beaded ceiling interior, having a total of six rooms, two baths, has a chimney, gas outlets, electricity, one tub, two toilets, one lavatory, two sinks, foundation brick piers."

### Rear Tenement

"* * * a two-story tenement dwelling stretching over the entire width of the lot, having a total floor area of 820 square feet. It is weatherboard on stud in the front, and imitation black composition rool roofing in the rear, beaded ceiling interior, concrete chain wall foundation, has eight rooms and two garages or sheds. That could be used for either. That property has two toilets, and two slop sinks and has electricity. It is occupied by four tenants * * *"

The defendant lived on the premises and received a controlled monthly rental of $167 per month, which is conceded to be somewhat low in comparison to present day rents.

Two expert realtors, Max J. Derbes and E. Holland Johnson, testified for plaintiff as follows as to the value of the property.

| 3831–33 Thalia Street: | $9,174.00 | Value |
|---|---|---|
| | 2,752.00 | Depreciation |
| | $6,422.00 | Net Value |
| | 180.00 | Shed |
| | 140.00 | Fence |
| | 210.00 | Paving |
| | $6,952.00 | |

| 3835–37 Thalia Street: | $5,841.00 | Value |
|---|---|---|
| | 1,460.00 | Depreciation |
| | $4,381.00 | Net Value |
| | 180.00 | Shed |
| | 100.00 | Fence |
| | $4,661.00 | |

| Rear Tenement: | $4,920.00 | Value |
|---|---|---|
| | 1,968.00 | Depreciation |
| | $2,952.00 | Net Value |
| | 368.00 | Shed |
| | $3,320.00 | |

Land (Valued at $60.00 a front foot) $3,600.00

Total Value ........................ $18,533.00

Mr. Derbes stated: "I know what it would cost an ordinary person to build but the figures I gave were the figures it would cost to build, the figures as of today. It should have cost them considerably less, sir, at the time they built them." He further stated that he based $18,533 as the price a willing seller and willing purchaser would agree upon as of the time of trial. A price of $5.50 a square foot was used in evaluating 3831–33 Thalia Street and $6 a square foot for 3835–37 Thalia Street. Depreciation employed was 30% for 3831–33 Thalia Street, 25% for 3835–37 Thalia Street, and 40% for the rear structure.

Cliff Probst, a licensed realtor, testified as an expert for the defendant. His evaluation is as follows:

"The ground, I put an appraisal of $4,500.00, which is $75.00 a front foot. It is a 60 x 112 nine inches, because I checked it. It is a *paved street and good* neighborhood, with conveniences. I put a value of $4,500 for the total ground. The building, the tenement in the rear, across the rear of the lot, is

two-story. I put an evaluation of four dollars a square foot, 1770 square feet, less 40% depreciation, making a net of $4,248.00 for the improvements across the rear of the lot. There is an extra garage. Let me get back to the tenement. There are nine rooms and a garage. There is an extra garage with a cement floor, and I valued that at $350.00. 3831–33 Thalia, that is a double camel-back. There is slate roof on the two-story section, and Johns Manville roof on the one-floor. Five rooms and bath each side, a total of ten rooms two baths. One side uses the whole upper. I put a valuation of seven dollars a square foot on it, less depreciation of 33⅓%, leaving a net valuation for the improvements of $7,935.48, plus a practically new rear shed with paved floor, $250.00. 3835–37 Thalia is one story double cottage. I used $7.00 less 33⅓% depreciation, or $4,896.36, and $250.00 for the rear shed which is practically new with a paved floor, making a total of $22,429.-84." (Emphasis ours.)

■ We believe that the following pronouncement from the case of Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541, 542, is applicable to this controversy:

"As a general rule the measure of compensation to be awarded in proceedings of this kind is the market value of the property—that is, the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. And most important in determining the market value are sales of similar or comparable properties in the vicinity. Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295; City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36; Housing Authority of New Orleans v. Brinkmann (Young) [224 La. 262] 69 So.2d 37, and the numerous cases therein cited. Here, however, the record contains no satisfactory evidence of sales of land and improvements comparable to that involved. *Hence, ascertainment of the true or intrinsic value must be sought by a consideration of other factors and circumstances. * * *"* (Emphasis ours.)

Although the instant record does contain, as evidence, two Acts of Sale, we do not find that the properties therein conveyed are comparable to the property herein involved. In our opinion, the locations are too far removed, and we do not find the descriptions similar. Therefore, as stated in the above quoted case, we must consider other factors and circumstances.

■ To arrive at a valuation of the property, we shall have to resort to the testimony of the expert witnesses.

"Moreover, the opinion of each witness qualified and accepted as an expert should be given effect if and when it appears to be *well grounded from the standpoints of sincerity and good reasoning.* City of New Orleans v. Larroux, 203 La. 990, 14 So.2d 812, State v. Landry, 219 La. 456, 53 So.2d 232, and Housing Authority of New Orleans v. Brinkmann [224 La. 262, 69 So.2d 37]." Housing Authority of New Orleans v. Boudwine, supra. (Emphasis ours.)

"* * * the general rule pertaining in cases of this type is that '* * * the opinion of each witness qualified and accepted as an expert should be given effect if and when it appears to be *well grounded from the standpoints of sincerity and good reasoning.*' See Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541 and cases there cited. * * *'" State of Louisiana through Department of Highways v. Glassell, 1955, 226 La. 988, 77 So.2d 881, 884. (Emphasis ours.)

Mr. Probst testified:

"*I would say that is has been a long time since I have seen colored property, colored double or colored tenement, that has been kept up as well as it has. In fact he has wallpaper, slate roof on the double, brick columns and cement steps on the place, and it looks like the owner has from time to time gone in to do certain improvements, and I also say that at this moment there is a terrific scarcity of places for colored people.*" (Emphasis ours.)

*Mr. Probst further stated that he had colored prospects that he could not handle because he did not have listings; that the prices were terrific where people were selling.*

The record discloses that the property is approximately twenty years of age and is rental in character. The preponderance of the evidence shows that it is livable and desirable to the tenants it attracts, and there is no evidence of any vacancy.

Mr. Johnson did testify that the rear building was not constructed with the required size joists and that the two front buildings, as well as the rear tenement, were devoid of guttering, causing some sinkage. However, he made no statement as to how the livability of the buildings was affected by these alleged deficiencies. Thus, he has not contradicted Mr. Probst's testimony above quoted. Neither has Mr. Derbes contradicted Mr. Probst's testimony.

The scarcity of property of the instant type, as of the time of trial, was not discussed by either Mr. Derbes or Mr. Johnson. Their testimony is more closely connected with replacement costs, and on this point Mr. Probst's testimony has, likewise, not been contradicted.

Analyzing the evidence as a whole, which includes photographs, we are of the opinion that Mr. Probst's evaluation is well grounded from the standpoint of good reasoning. It further appears, from his uncontradicted testimony, that property of the type herein involved has increased in value during the 1950's, and it has been held that this Court can take judicial cognizance of that fact. State v. Landry, 219 La. 456, 53 So.2d 232; Greater Baton Rouge Port Commission v. Watson, 224 La. 136, 68 So.2d 901.

For the reasons assigned, we conclude that there is no error in the judgment of the trial court awarding the defendant $22,429.84, and the judgment is affirmed.