McBRIDE, Judge.
Originally this suit involved a claim by plaintiffs against their vendors for the rescission of the sale of 2209 Roosevelt Boulevard, Parish of Jefferson, on the ground of redhibition. During the trial the suit was terminated by compromise, the nature of which was somewhat unusual. On September 24, 1965, defendant William Bryant, in open court, made a verbal offer to compromise the suit by personally agreeing to purchase 2209 Roosevelt Boulevard from plaintiffs on the following terms and conditions: The sale for the price of $20,214.83 to be without warranty by the sellers as to the soundness of the buidings, the act of sale to be passed before purchaser’s notary within 60 days. Plaintiffs verbally accepted the “compromise” offer to Bryant and agreed to sell to him on such terms. It was further mutually agreed that whereas the property was then in a damaged condition as a result of hurricane Betsy, the pending claim which plaintiffs had against their windstorm insurer for the amount of the loss would be assigned to Bryant.
As reflected by the stenographic notes of evidence, all parties and the trial judge considered the litigation fully compromised by virtue of the offer to buy and agreement to sell.
On October 16, 1965, before the termination of the 60-day period in which Bryant was to take title, plaintiffs entered into a written agreement of sale with J. Q. Kuebel whereunder they would purchase from him Lot 50 with improvements of Macque Subdivision for $37,000 and Kuebel was to purchase from them 2209 Roosevelt Boulevard “Subject to the conditions listed on the reverse side hereof”, the pertinent portions of such conditions reading thusly:
“1. After 45 days J. O. Kuebel agrees to purchase from Mr. and Mrs. Maneer E. Elazab their residence located at #2209 Roosevelt Blvd., Kenner, Louisiana, for the sum of Eighteen Thousand Seven Hundred Twenty Dollars ($18,-720.00). This purchase agreement will be null and void should Mr. and Mrs. Elazab, the owner, decide to pay in cash $18,720 towards the purchase of 193 Macque St. to cancel this paragraph of the agreement. It is further agreed and understood that the agreement to pur *836 chase 193 Macque Street is final and definite and that the owners, Mr. and Mrs. Elazab, at their option can either sell 2209 Roosevelt Blvd. for his own account or sell to J. O. Kuebel for the price and sum as agreed $18,720.00 when passing the act of sale of 193 Macque Street, Harahan, Louisiana.
i}c jfc íjí í[í ‡ ‡
“3. The Dixie Homestead has an appraisal on 2209 Roosevelt Blvd. of $20,800 less $1,800.00 for storm damage or an appraisal of $19,000.00 as is. Since the amount of $1,800 is covered by insurance they will require the Storm Damages repaired. It is understood Mr. Elazab will complete these repairs as listed on the appraised report, before title is exchanged, and likewise all work at 193 Macque St. shall be completed by J. O. Kuebel.”
On November 24, 1965 (one day subsequent to the termination of the 60-day period within which Bryant was to take title) plaintiffs filed a rule against Bryant reciting that he did not take title to 2209 Roosevelt Boulevard as per his agreement and seeking “ * * * a judgment * * * against William Bryant, in their favor in a sum that is just, fair and equitable by virtue of the pleadings and most especially the stipulations hereinabove referred to.”
There was no objection whatever made on behalf of Bryant as to the form of procedure invoked by plaintiffs or as to time at which the rule was filed, and the matter was contradictorily tried on December 3, 1965, evidence being adduced on behalf of all parties. Upon termination of the trial, the judge below made the rule absolute and rendered judgment in favor of plaintiffs (movers) and against Bryant for the sum of $1498.83, which is the exact difference between the amount for which Bryant had offered to buy 2209 Roosevelt Boulevard and the amount for which plaintiffs sold said property to Kuebel under their agreement with him. As part of the evidence appears a certified copy of a notarial act of sale wherein plaintiffs sold 2209 Roosevelt Boulevard to Joseph Kuebel for $18,720, said act being dated December 1, 1965, which was a time subsequent to the filing of the rule for judgment against Bryant.
Bryant has perfected this appeal from said judgment rendered against him on the rule.
Pretermitting all contentions of appellant Bryant, our opinion is that the judgment appealed from is clearly erroneous and must be reversed for the simple reason movers in rule were not damaged to any extent by the failure of Bryant to-purchase 2209 Roosevelt Boulevard.
As pointed out, the trial judge measured the “damages” by computing the difference between the price Bryant had offered to pay and the amount for which movers sold to Kuebel. This formula is not the proper method for measuring any damages movers sustained, but even if that formula is utilized movers have proved no loss. It was error to accept the figure of $20,214.83 as the amount for which Bryant was obligated to buy the property. It is not to be overlooked that movers at the time of their agreement with Bryant then had a pending claim against their windstorm insurer for the amount of damages inflicted upon the property by the hurricane. Under the agreement not only was Bryant to receive title to the property for the $20,214.83, but he was also to become the assignee of movers’ claim against the insurer. The amount of such claim can be gleaned from the record as there appears in the condition on the reverse side of the subsequent agreement of sale between movers and Kuebel a stipulation that' the storm loss was $1800. To asscertain what price Bryant was to pay for the property “as is” we should deduct the $1800 from the gross purchase price of $20,214.83 (which Bryant was to pay in consideration of both the transfer of title and the assignment of the insurance claim) which would leave a net purchase price for the *837 property of $18,414.83 which is several hundred dollars less than the $18,720 for which Kuebel bought. Clearly, movers were not damaged by Bryant’s failure to take title because the purchase price paid by Kuebel exceeded the net amount they would have received from Bryant had he taken title.
The proper measure of damages for a buyer’s breach of an executory contract of sale is the difference between the contract and the market price. R.C.C. art. 2555; Mutual Rice Co. v. Star Bottling Works, 163 La. 159, 111 So. 661; Washburn Crosby Co. v. Riccobono, 162 La. 698, 111 So. 65; Wertham Bag Co. v. Roanoke Mercantile Co., 157 La. 312, 102 So. 412; Shushan Bros. v. Vilensky, 12 La.App. 183, 124 So. 562; Cyrus W. Scott Mfg. Co. v. Stoma, 10 La.App. 469, 121 So. 335 and Belle Alliance Co. v. International Molasses Co., 8 Orleans App. 176.
In Friedman Iron & Supply Co. v. J. B. Beaird Co., 222 La. 627, 63 So.2d 144, the Supreme Court said on rehearing:
“Under the provisions of Article 1934, LSA-Civil Code, the damages due the plaintiff for the defendant’s breach of the contract is the amount of the loss the plaintiff has sustained and the profit of which it has been deprived * * *. This court has on numerous occasions pointed out that the measure of damages for the breach of a contract of sale, where no fraud is shown, is the difference between the contract price and the market price of the goods on the date of the breach. See Interstate Electric Company v. Frank Adam Electric Company, 173 La. 103, 136 So. 283 and the authorities cited therein to that effect.” (Italics theirs).
In the above cited cases the subject of the sale was movable property; however, the measure of damages for a ven-dee’s neglect to obtain delivery of the thing sold is identical whether the object of the sale be movable property or an immovable. This clearly appears from footnote 3 in Womack v. Sternberg, 247 La. 566, 172 So.2d 682, in which case the Supreme Court was concerned with measuring the damages due for the failure of a party to exchange real estate in accordance with his contract. The Court held that the rules governing a contract of sale apply as well to the contract of exchange and pointed out in the footnote:
“The Civil Code does not make any distinction between movables and im-movables with respect to the damages due for breach of contract of sale and there appears to be no good reason why the jurisprudence respecting movables should not apply to all kinds of property. See Du Bell v. Union Central Life Ins. Co., 211 La. 167, 29 So.2d 709.”
As to the measure of damages for a breach of a contract of exchange, the Court said:
“ * * * it is readily seen that the damages due to the creditor for the profit of which he has been deprived by reason of the breach is and can only be one item of damage — viz., the difference between the market value of the thing he was to give and the thing or things he was to receive in exchange.”
The jurisprudence of this state defines “market value” and sets forth how it should be determined. The market value of the property is the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. The preferred yardstick in the determination of the value of property is evidence of sales of similar or comparable properties in the vicinity. Where, however, the record contains no satisfactory evidence of sales of property comparable to that involved, the ascertainment of the true value must be sought from a consideration of other factors and circumstances. The opinion of expert witnesses qualified and accepted is ofttimes *838 given effect on the question of value of property if and when such opinion appears to be well grounded. Housing Authority of New Orleans v. Waters, 233 La. 259, 96 So.2d 560; Mississippi River Bridge Authority v. Curry, 232 La. 140, 94 So.2d 9; State Through Dept. of Highways v. Madden, La.App., 139 So.2d 21; State Through Dept. of Highways v. Ebrecht, La.App., 135 So.2d 624; State Through Dept. of Highways v. Boyer, La.App., 130 So.2d 738, and many other cases.
In this case we have no evidence of sales of similar or comparable property in the vicinity nor do we have any expert testimony as to the value of 2209 Roosevelt Boulevard. However, there is in the record a certain bit of evidence which we believe should be accepted as determinative of the market value. We refer to the recital contained in condition (3) appearing on the reverse side of the October 15, 1965 agreement of sale between movers and Kuebel which sets forth the appraisal of the property as being $20,800 “ * * * less $1,800.00 for storm damage or an appraisal of $19,000 as is.” This appraisal was made by the Dixie Homestead Association and was concurred in and approved by movers and inserted in their contract with Kuebel.
Nothing appears in the record to show, at the time Kuebel accepted title, whether the storm damage had been repaired, but that is of no moment. The two appraisals, $20,800 after repairs and the figure of $19,000 “as is” must be accepted as the market values. This being so, the net amount Bryant was to pay is less than either market value and Bryant’s purchase price and any difference between the two is in favor of Bryant and not in favor of movers.
It is apparent that movers sold their property to Kuebel for less than the market price.
For the above and foregoing reasons, the judgment appealed from is reversed; it is now ordered, adjudged and decreed that the rule filed by appellees on November 26, 1965, be dismissed; appellees are condemened to pay the costs in both courts.
Reversed.