AYRES, Judge.
This is an expropriation proceeding by which plaintiff, a public-service corporation, seeks to obtain a right of way for the construction and completion of a pipeline to transport natural gas from plaintiff’s wells in the Elm Grove Field of Bossier Parish to its Arsenal Hill Plant in Shreveport, Caddo Parish, Louisiana, a distance of approximately 31 miles, for use in the generation and distribution of electricity to the general public.
To plaintiff’s action, defendants interposed exceptions of no cause and of no right of action based primarily on the propositions:
1. The allegations of plaintiff’s petition are insufficient to establish, if proved, the need for a gas transmission line;
2. Nor is there any authority in law for the condemnation of property by plaintiff for a natural-gas pipeline.
These exceptions were sustained and, from a judgment accordingly dismissing plaintiff’s action, plaintiff appealed.
Defendants have moved in this court for a dismissal of plaintiff’s appeal for the reasons that appellant failed to obtain an order of appeal showing a return date and fixing the amount of security to be furnished; and, moreover, that their counsel were not furnished notice of the appeal as required by LSA-C.C.P. Art. 2121. This motion is not supported by the facts and is without merit. A copy of the initial minute entries was as follows:
“May 17, 1973 By agreement of counsel, motion for a continuance is dis-
missed and argument on peremptory exceptions is continued to May 24, 1973. Case is set for trial on June 21, 1973.
“May 24, 1973 Exception of no cause or right of action is called, argued and is sustained. On oral motion of counsel for plaintiff, instanter writs and suspensive and devolutive appeal are asked for and are granted to the Honorable Court of Appeal, Second Circuit, Shreveport, Louisiana returnable May 28, 1973. Devolutive appeal bond is set at $500.00.”
However, by “correction,” the entry of May 17, 1973, was maintained as originally written. The entry of May 24, 1973, was corrected to read:
“May 24, 1973 Exception of no cause or right of action is called, argued and is sustained.”
An entry of May 25, 1973, was added which reads:
“May 25, 1973 Judgment is signed and filed. Devolutive and suspensive appeal are asked for and granted by the Court, returnable to the Honorable Court of Appeal, Second Circuit, Shreveport, Louisiana on May 28, 1973. Devolutive appeal bond is set at $500.00 and suspensive appeal bond is fixed according to law.”
Moreover, LSA-C.C.P. Art. 2121 provides, in pertinent part:
“The failure of the clerk to mail the notice [of appeal to counsel] does not affect the validity of the appeal.”
Defendants also moved to strike from the record an affidavit as to certain facts attached to and supporting plaintiff’s motion for an early and expeditious hearing of this matter on appeal. The affidavit is ex parte and has no bearing on the issue as to whether plaintiff’s petition discloses a cause of action. Defendants’ motion to strike is in order and will be sustained.
*257 But we find no merit in defendant’s contention with respect to the alleged insufficiency of plaintiff’s petition to set forth a need for the right of way sought. It is an elementary principle of law that in the disposition of an exception of no cause of action all allegations of fact properly pleaded must be accepted as true. In thus viewing plaintiff’s petition, it appears:
1. That plaintiff is a public-utility corporation, created for the purpose of developing and transmitting electricity for power, lighting, and heating, as well as for many other uses; that plaintiff is currently and has been for many years in the business of developing, generating, and distributing electric power and energy to the public; and that it is the principal supplier of electric energy in the Parishes of Bossier and Caddo as well as in Shreveport and Bossier City and other municipalities and communities of the two-parish area;
2. That to supply its customers, the public, with electricity, plaintiff maintains and operates two generating or power plants — Arsenal Hill in Shreveport and Lieberman on Caddo Lake in Caddo Parish — both of which are designed for and use natural gas as boiler fuel in the development and generation of electricity;
3. That for the purpose of operating its plants plaintiff has generally relied upon purchases of natural gas from pipeline companies serving the area; that due to a well-known and well-publicized shortage of natural gas, plaintiff’s suppliers are no longer in position nor do they have the gas to furnish sufficient quantities to fulfill plaintiff’s needs or requirements ;
4. That, in an effort to augment and supplement its source of supply, plaintiff has drilled and completed seven or more wells in the Elm Grove Field, the flow of gas from which it proposes to use in its Arsenal Hill Plant where it is needed to develop electricity to fulfill the existing and ever-increasing prospective demands made upon it by residential, commercial, and business customers, as well as schools, hospitals, and military institutions; and
5.That, finally, a right of way SO feet wide and 17,940 feet long which, in area, comprises ■ 20.61 acres, 16.20 acres of which coexists with a presently existing electric-power-line right of way is needed across defendants’ property for the aforesaid construction and completion of a pipeline to convey natural gas from plaintiff’s wells to its generating plant.
Accepting plaintiff’s allegations of fact as true, which we must, for the purposes of our consideration of the exception of no cause of action, the conclusion is inescapable that plaintiff’s petition alleges a need exists warranting plaintiff’s acquisition of the right of way so that its generating plant may have access to and be provided with adequate fuel. Without adequate fuel, an inadequate supply of electricity would result and the public would be deprived of not only a convenience but of a vital necessity.
The remaining issue presents a legal question as to whether a corporation created for the purpose of and engaged in the business of developing and transmitting electricity for power, lighting, heating, or other such or similar uses has or enjoys the right and privilege under the laws of this State relating to expropriation to expropriate a right of way for a natural-gas pipeline to be constructed for the purpose of bringing to its generating plant needed gas to provide fuel essential to its development of the electricity which it is supplying to the general public.
Defendants contend that expropriation is in derogation of the common right of one to own property, and that the statutes *258 granting the power to expropriate must be strictly construed and not be so construed as to extend to instances not clearly and explicitly provided for.
The position of plaintiff is that though the right of eminent domain and the statutes conferring the right are to be strictly construed, they are nevertheless to be construed fairly and reasonably and not so narrowly as to defeat the obvious purposes intended and contemplated by their enactment. Title 19 of the Revised Statutes is concerned with the rules of law relating to the subject of expropriation. With reference to that subject, it is recited that “the term ‘property’ means immovable property, including servitudes.” LSA-R.S. 19.1. The statute then declares :
“Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property:
}{C jj* Sfc ‡ ‡
“(9) Any domestic or foreign corporation created for the purpose of developing and transmitting electricity for power, lighting, heating, or other such uses. The buildings, transmission lines, stations, and sub-stations expropriated or for which property was expropriated shall be so located, constructed, operated, and maintained as not to be dangerous to persons or property nor interfere with the use of the wires of other wire-using companies or, more than is necessary, with the convenience of the land-owner.” (Emphasis supplied.)
LSA-R.S. 19:2.
Defendants would restrict the expropriation or taking to property needed for buildings, transmission lines, stations, and substations. The language of the aforesaid section of the statute does not warrant such an interpretation. There the statute does say, with respect to the enumerated items, that they “shall be so located, constructed, operated, and maintained as not to be dangerous to persons or property nor interfere with the use of the wires of other wire-using companies or, more than is necessary, with the convenience of the land-owner.”
Under clear and unambiguous language, expropriation, so the statute provides, may extend to .all "needed property." No limitation is placed upon the property, which may be expropriated, other than that it "he needed” for the purposes for which the corporation is created, that is, the development (generation) and transmission of electricity for power, lighting, heating, or other such uses.
Resolution of the issue herein involved resolves itself into a determination of whether or not the right of way, which plaintiff is seeking to expropriate, constitutes property needed by plaintiff for the purpose of developing and transmitting electricity.
Plaintiff’s need of the gas produced in its Elm Grove wells is, as already noted, clearly set forth in its petition. Its electric-generating plants are designed and constructed to use natural gas as fuel to generate steam to operate turbines in the electric-generating process. Its supplier has warned of its inability to continue to provide natural gas in sufficient quantities to meet plaintiff’s needs. Cutbacks in the supply have been initiated. Further curtailment is an immediate prospect. There is no other prospective source of supply but from plaintiff’s own wells. The need of the gas produced therefrom and the need of a pipeline to convey the gas to plaintiff’s plant where it can be utilized in the generation (development) of electricity is amply demonstrated in the allegations of plaintiff’s petition. Plaintiff is thus confronted with the alternative of either developing its own source of supply of natural gas or of risking its inability to develop electricity in sufficient quantities to meet the demands of the people it serves.
Although we have been referred to no precise definition of the term “development of electricity,” in the jurisprudence of this State it appears logical that the *259 word “develop” in our statute must be considered synonymous with the word “produce” and hence refers to the production or generation of electricity. See: Forrester v. North Georgia Electric M. Corporation, 66 Ga.App. 779, 19 S.E.2d 158, 161 (1942).
Referring again to the statute LSA-R.S. 19:2, it is explicit that any domestic or foreign corporation created for the purpose of developing and transmitting electricity for the uses and purposes therein designated may expropriate needed property. The right to expropriate is not otherwise limited or restricted. The gas is needed in the development or production of electricity. It is available for the purpose. Its utilization may be accomplished only through its transmission by pipeline from the gas wells to the generating plant. A pipeline is therefore essential for the purpose. Hence, the conclusion is inescapable, from a reading of plaintiff’s petition, that a right of way or servitude for the pipeline constitutes not only needed but necessary property.
This court has not been referred to any Louisiana decision squarely in point. Our individual research has disclosed none. Hence, the parties litigant concede no such authority exists in the jurisprudence of this State. However, the rationale of the decisions in this State tend to support plaintiff’s position. In State v. Bradford, 242 La. 1095, 141 So.2d 378 (1961), the Supreme Court rejected the contention that the language of the statute appropriate to a taking for highway purposes should be narrowly construed to mean only the route or the right of way for the highway itself. It was there held that the term “for highway purposes,” with regard to needed property, encompassed the taking of land other than that comprising the right of way itself for the extraction of dirt to be used in the construction of a highway. The statute under which the taking was effected, LSA-R.S. 48:222, did not specifically so provide.
In City of Gretna v. Brooklyn Land Co., 182 La. 543, 162 So. 70 (1935), rights similar to those sought here were recognized. There the operator of a public waterworks system, with the right of expropriation under the provisions of LSA-R.S. 19:2(6), owned a filtration plant several blocks from the Mississippi River. To obtain water needed to operate the filtration plant, it became necessary to secure a right of way to lay pipes to the river and to thus bring water into the plant through a pumping system. The landowner opposed the expropriation for the reason, among others, that the land was “not necessary for the city’s purposes.” The holding in that case is authority for the proposition that under our expropriation laws needed property may be acquired where necessary for the ingress of a needed substance, such as fuel, essential to a plant’s operation.
Similar issues have been considered in other jurisdictions where the right of expropriation for the ingress of needed power-plant fuel or facilities has been recognized. In Ohio Power Co. v. Deist, 154 Ohio St. 473, 96 N.E.2d 771 (1951), the Supreme Court of Ohio held that a belt conveyor to transport coal from an electric company’s coal field to a generating station four miles away was a “structure” or “appliance” forming an integral part of the electric company’s plant and was reasonably necessary for its operation to permit the company to expropriate a right of way over private land for the erection of the belt.
In Kaiser Steel Corporation v. W. S. Ranch Company, 81 N.M. 414, 467 P.2d 986 (1970), the Supreme Court of New Mexico held that plaintiff corporation had a right to condemn a right of way of adjacent private property for the purpose of laying a pipeline to transport water from a river to the corporation’s coal property for use in a coal mine under development where water was needed in the extraction process.
*260 In Illinois Central Railroad Co. v. Ten-' nessee Valley Auth., 445 F.2d 308 (6 Cir. 1971), it was held that the Tennessee Valley Authority had the power to condemn an easement across land for the purpose of constructing a conveyor to transport coal for use in its steam plants.
The Florida District Court of Appeal, in the case of Seadade Industries, Inc. v. Florida Power & Light Co., 232 So.2d 46 (1970), affirmed the decision of a trial court and upheld an expropriation by the power company of a strip of land approximately 4Yz miles long and 660 feet wide to be used partially as a canal for circulating and cooling a water system in connection with a generating plant fueled by nuclear energy.
There is no feasible means of transporting natural gas other than through a pipeline. It must be recognized that such a pipeline, constructed for the purpose of bringing needed fuel to the generating plant, is a part of the development of electricity. Applicable here are certain general principles of law:
For example, in 26 Am.Jur.2d Eminent Domain, § 56, p. 711, it is pointed out that:
“The taking of property necessary to the production and distribution of electric light and power to the public is a taking for a public use.”
(Emphasis supplied.)
And, in 29A C.J.S. Eminent Domain § 58, pp. 294-295, it is stated:
“The erection, maintenance and operation of plants or other facilities for generating electricity and distributing it to the public for light, heat, or power ordinarily is regarded as a public use or purpose for which private property may be appropriated, such appropriation being subject to such restrictions as are imposed by the statutes which govern the subject. To this end land, water, or water rights may be taken for dams, ditches, or reservoirs for the creation and transmission of water power to be used in generating the electricity, or for other
purposes in connection with such generation.” (Emphasis supplied.)
In agreement also is the decision of this court, speaking through Judge Taliaferro in the case of Louisiana Power & Light Co. v. Mosley, 18 So.2d 210, 215-216 (1944-cert, refused), wherein it was held:
“Now, it seems beyond doubt that a corporation ‘organized for the purpose of developing and transmitting electricity for power, lighting, heating’, etc. and which engages in such purposes, is engaged in a public business in which the public is greatly interested and from which it is possible that far reaching benefits will accrue. This being true, property needful for the conduct of such business or businesses and which has to be taken in the manner ordained by law, is taken and acquired for ‘public purposes' in keeping with the above quoted section of the Constitution.” (Emphasis supplied.)
The right of a hydroelectric power company to expropriate facilities and easements needed for the development of hydroelectric power has been repeatedly recognized. For example, in an annotation appearing at 44 A.L.R. 735 et seq., the writer quotes at length from the case of Nolan v. Central Georgia Power Co., 134 Ga. 201, 67 S.E. 656 (1910), as follows:
“‘The first question for consideration is whether the Act of December 7, 1897 (Acts 1897, p. 68), confers the right to exercise the power of eminent domain only in order to obtain rights of way or other easements necessary for the erection of poles, stringing of wires, and similar things for the delivery of electric power from the power plant, and its use, after transmission, in lighting towns and cities and supplying motive power to railroads or street car lines, or supplying light, heat, or power to the public, or whether it also includes the right to condemn other easements essential in maintaining dams, backing water in their erection, and like uses essential to the development of the water power and put *261 ting it into use in connection with the things above mentioned. . . . The general public objects, or utility, underlying this grant of the right to exercise the state’s power of eminent domain, would not be carried out and rendered completely effectual by condemnation for the purpose of transmission of the current and its utilization at the end of the line. The generation of electricity is as essential as its transmission. The ordinary method in which a water power is utilized is by means of a dam. It could not be erected without causing backwater. . . . Giving to the act a reasonable construction in order to carry out its evident intent and purpose, it includes the power to condemn an easement in order to back water on the property of another in the necessary development of a water power for the public purposes indicated; and this is true although the land on which the easement is contained may also have on it an undeveloped water power, save as in the act excepted. . . .”
(Emphasis supplied.)
44 A.L.R. 749.
Again, in the case of Mt. Vernon-Wood-berry Cotton Duck Co. v. Alabama I. P. Co., 240 U.S. 30, 32, 36 S.Ct. 234, 236, 60 L.Ed. 507, 511 (1916), the Supreme Court of the United States, speaking through Mr. Justice Holmes, pointed out:
“The principal argument presented that is open here, is that the purpose of the condemnation is not a public one. The purpose of the Power Company’s incorporation, and that for which it seeks to condemn property of the plaintiff in error, is to manufacture, supply, and sell to the public, power produced by water as a motive force. . . . We perceive no ground for the distinction attempted between the taking of rights below the contemplated dam, such as these are, and those above. Compensation is provided for according to rules that the court below declares to be well settled and that appear to be adequate. . . .” (Emphasis supplied.)
The controversy, as heretofore noted in State v. Bradford, supra, resolved itself into a determination of the meaning of “highway purposes” as contained in the constitutional and statutory authorities granted to the Department of Highways for expropriation purposes. What was sought there to be expropriated was a temporary servitude on approximately 15 acres of the defendant’s land in order to extract dirt fill for use in the construction of a highway between Alexandria and Pineville, and our Supreme Court, in construing the phrase “highway purposes,” held:
“This language, albeit broad in scope, is clear and explicit. Hence it is not subject to construction and should be applied according to the most usual signification in which the words used are generally understood. Article 14 of the Civil Code. The word ‘property’ includes all property which is subject to the power of eminent domain under our law, i. e.,' — immovables (see R.S. 48:217; R.S. 48:222; R.S. 48:223), wherever situated • — provided the taking is for a highway purpose, i. e., for use in the building, improvement, maintenance and repair of the State highway system (see R.S. 48:21), and not whether.the land to be taken is or is not part of the highway right of way. If the framers of Section 19.1 had intended that the authorization to the Legislature to expropriate property by ex parte orders was to be limited to the property forming part of the highway right of way, it would have been easy to thus provide by appropriate language. Indeed, the very fact that the language used is of broad scope must be considered by us as a cogent reason for not restricting the meaning of the law to categories not plainly indicated by the lawmaker.” (Emphasis supplied.)
141 So.2d 386.
Our conclusion is that plaintiff’s petition sufficiently alleges that the property herein sought to be expropriated constitutes “needed property” for use by plaintiff “for the purpose of developing . . . elec *262 tricity for power, lighting, heating, or other such uses”; that the power of expropriation thus sought to he exercised comes within the grant of authority made in LSA-R.S. 19:2; and that plaintiff’s petition discloses a cause and a right of action, and the exception thereto should have been overruled.
For the reasons assigned hereinabove, defendants’ motion for a dismissal of plaintiff’s appeal is denied; defendants’ motion to strike the ex parte affidavit attached to plaintiff’s motion for an expeditious hearing of this matter in this court is sustained; and the judgment sustaining defendants’ exceptions of no cause and of no right of action should be, and the same is hereby, reversed and these exceptions shall be, and they are now, overruled; and
It is further ordered that this cause be remanded to the Honorable Twenty-Sixth Judicial District Court in and for Bossier Parish, Louisiana, for further proceedings in accordance with law and consistent with the views herein expressed.
Defendants-appellees are assessed with the cost of this appeal.
Reversed and remanded.