FORET, Judge.
Plaintiff, Red River Waterway Commission (Commission), instituted an expropriation proceeding against several property owners in Natchitoches Parish near Marco, seeking to expropriate property for the building of a road leading to the construction site of Lock & Dam # 3. Two of the landowners involved, Joseph and Daniel Regard (Regards) thereafter filed a Motion to Vacate or Modify an Order of Expropriation and/or Dismiss in the Tenth Judicial District Court, seeking to amend or set aside the order of expropriation previously rendered. A hearing on the Regards’ motion was held and the trial court ruled in favor of the Regards, vacating the order of expropriation. The Commission has appealed the trial court’s judgment, and the Regards have answered the appeal, asking for additional attorney’s fees incurred in defense of this action. We reverse and remand.
FACTS
The Red River Waterway District (District) is a body politic of the State of Louisiana created pursuant to La.R.S. 34:2301, having jurisdiction of all territory located in the parishes of Avoyelles, Rapides, Natchitoches, Red River, Grant, Bossier, and Caddo. The purpose of the District, as stated in R.S. 34:2302, is to establish, operate, and maintain a navigable waterway system extending from the vicinity of the confluence of the Red River with Old River and the Atchafalaya River northwestward in the Red River Valley to the state boundary. The Red River Waterway Commission was created pursuant to R.S. 34:2302 to govern the Red River Waterway District.
The construction of Lock & Dam #3 along the Red River near Marco is a joint project undertaken by the Commission and the U.S. Corps of Engineers. The lock and dam structure was designed by the Corps of Engineers and is to be funded, constructed, and thereafter maintained by the Corps. The Commission is charged with the responsibility of acquiring property rights for the construction of all navigable works, including any necessary access roads for construction and maintenance of the lock and dam structure. According to the plans developed by the Corps, the actual lock and dam structure is to be located on the south side of the river, but the facilities to operate the lock and dam will be located on the north side. Land access is needed from the south side of the river for construction and subsequent maintenance of the lock and dam structure. Studies conducted by the Corps and the Commission determined that existing roads were inadequate and it was therefore deemed necessary to construct a new, upgraded roadway to accommodate large trucks and other heavy equipment which may, from time to time, travel the roadway. The proposed roadway (hereinafter referred to as access road) is located between La. Hwy. 49.0 and the so-called Lena Route. The access road intersects La. Hwy. 490 about one mile west of Marco and, from this point to the lock and dam site, Hwy. 490 is to be used after upgrading the roadway and straightening some of its curves. Attached hereto as Exhibit A is a plat which depicts the access road as well as suggested alternate routes, La. Hwy. 490 and the Lena Route. The Regards are the owners of property traversed by the proposed access road. Attempts to amicably purchase their interests proved to be fruitless and accordingly, expropriation proceedings were instituted by the Commission pursuant to R.S. 48:441, et seq.
PROCEDURAL POSTURE
As noted earlier, expropriation proceedings have been instituted by the Commission pursuant to R.S. 48:441, et seq., commonly referred to as the Quick Taking Statute, made applicable to the Commission *906 through R.S. 34:2309(4)(b) which provides as follows:[1]
“§ 2309. Powers and authority
In addition to the powers and authority elsewhere granted in this Chapter, the commission is hereby granted, shall have, and may exercise all powers necessary or convenient for the carrying out of its objects and purposes, including, but without limiting the generality of the foregoing, the following: ....
... .(b) To expropriate property on sites for Lock and Dam Numbers 3, 4, and 5 and their respective pools in accordance with the provisions of Part XVIII of Chapter 1 of Title 48 of the Louisiana Revised Statutes of 1950 provided any certificate, authorization, and estimate required for the expropriation shall be signed by the chairman of the commission. However, no property may be expropriated pursuant to this subsection for recreational purposes.”
R.S. 48:441 authorizes expropriation by ex parte order when the expropriating agency cannot acquire the property in question by amicable means. Thereafter, a full scale trial on the merits is held to determine just compensation. The Regards have challenged the order of expropriation rendered in these proceedings by filing a motion to dismiss pursuant to R.S. 48:447, which is as follows:[2]
“§ 447. Contesting validity of taking; waiver of defenses
Any defendant desiring to contest the validity of the taking on the ground that the property was not expropriated for a public purpose may file a motion to dismiss the suit within ten days after the date on which the notice was served on him. He shall certify thereon that a copy thereof has been served personally or by mail on either the plaintiff or its attorney of record in the suit. This motion shall be tried contradictorily with the plaintiff to the judge alone and shall be decided prior to fixing the case for trial.
Failure to file the motion within the time provided constitutes a waiver of all defenses to the suit except claims for compensation.”
The trial court granted the Regards' motion to dismiss.
ISSUES
The issues presented for our consideration on appeal are as follows:
I
May the Commission avail itself of the Quick Taking Statute in order to expropriate property which will be used to provide access to the construction site of Lock & Dam #3?
II
If the answer to issue # 1 is Yes, did the Commission act arbitrarily, capriciously, or in bad faith in determining the necessity of the taking?
III
In the event we find that the subject property was legally expropriated, is the Commission entitled to acquire the property in full ownership?
IV
Are the Regards entitled to additional attorney fees on appeal?
I
R.S. 34:2302 is as follows:
“§ 2302. Purpose; commission
The district is created for the object and purpose of establishing, operating and maintaining, individually or in cooperation with the federal government, the state and its various agencies, subdivisions and public bodies, a navigable waterway system to be known as the Red River Waterway, hereinafter simply called the ‘waterway,’ extending from *907 the vicinity of the confluence of Red River with Old River and the Atchafalaya River northwestward in the Red River Valley to the state boundary. To that end and for the purpose of this Chapter, the district shall be governed by a body or commission which shall be known as the Red River Waterway Commission, hereinafter simply called the ‘commission’.”
Also applicable hereto is sub-section 3 of R.S. 34:2309, which provides as follows:
“§ 2309. Powers and authority
In addition to the powers and authority elsewhere granted in this Chapter, the commission is hereby granted, shall have, and may exercise all powers necessary or convenient for the carrying out of its objects and purposes, including, but without limiting the generality of the foregoing, the following:
[[Image here]]
(3)[1] To acquire by purchase, donation, lease, or otherwise, and to hold and use any property, real, personal, or mixed, tangible or intangible, or any interest therein necessary or desirable for carrying out the objects and purposes of the commission; to sell, lease, transfer, and convey any property or interest therein at any time acquired by it; and to donate by fee simple title, or otherwise convey, to the United States any lands, property, movable and immovable, rights of way, easements or other servitudes, or any of them, which the commission may own or acquire by purchase, donation, expropriation, or otherwise, for use in connection with the construction, improvement, and maintenance of the waterway. The authority granted by this Paragraph shall extend to the acquisition, in any manner herein provided, and the conveyance of lands, servitudes, or rights of way to the United States which are required by the United States Army, Corps of Engineers, for the construction, improvement, and maintenance of locks and dams along the waterway.” (Emphasis ours).
The clear meaning of R.S. 34:2309(4)(b), when read in conjunction with R.S. 34:2309(3), is that it authorizes the Commission to use the Quick Taking Statute to carry out the object and purposes of the Commission. In view of this, we have little difficulty in finding that the building of an access road for the construction and maintenance of a lock and dam falls within the object and purpose of the Commission as defined by R.S. 34:2302, and this position is clearly supported by the jurisprudence. In State, etc. v. Jeanerette Lumber & Shingle, 350 So.2d 847 (La.1977), the Court dealt with a situation factually analogous to the instant case. In Jeanerette, the Dept, of Transportation & Development sought to expropriate through the Quick Taking Statute a right-of-way for a canal to provide access to the construction site for a bridge. In finding that DOTD was entitled to expropriate under the Quick Taking Statute, our Supreme Court stated the following:
“Defendant contends that the servitude expropriated for the access canal was not taken for highway purposes because it is located outside the highway right of way. However, it is well settled that the Department of Highways’ authority to expropriate property by ex parte order includes all property subject to eminent domain, wherever situated, provided that the taking is for highway purposes, i.e., for use in the building, maintenance and repair of the highways, regardless of whether the land to be taken is located within the highway right of way. La.Const. 1921, Art. VI, § 19.1; Act 107 of 1954; State v. Bradford, 242 La. 1095, 141 So.2d 378 (1962). In the instant case it is not disputed that the servitude was used by the Highway Department to give its contractors and ma-terialmen access to the site of the construction of the highway bridges. Accordingly, it is clear that the expropriation at issue was effected for highway purposes.”
Thus, Jeanerette established that the Quick Taking Statute may also be used to expropriate property needed to provide access to a construction site and we adopt such a *908 holding in this case. In so doing, we specifically reject the Regards’ contention that the expropriation was for recreational purposes in view of the substantial evidence of record indicating that there are no present plans to construct any recreational site in the area in question. Furthermore, the evidence is overwhelming that the purpose of the access road is to provide transportation to and from the lock and dam site for the construction and maintenance thereof. We further reject the Regards’ contention that R.S. 34:2309(4)(b) limits the Commission’s use of the Quick Taking Statute to expropriation of property to be used for the actual construction of the lock and dam structure. To place such a restricted meaning on R.S. 34:2309(4)(b) would render this provision completely useless in view of the fact that land access to the lock and dam sites (to be located along the Red River) will almost always be required. Thus, if the Commission is allowed to use the Quick Taking Statute to purchase property for the actual sites for the lock and dam but prohibited from using it to gain access for construction and maintenance, the provisions of R.S. 34:2309(4)(b) will be of little or no use to the Commission. Considering this, we refuse to ascribe such a meaning to this important statutory provision and find that R.S. 34:2309(4)(b) does allow the Commission to use the Quick Taking Statute to expropriate land to be used for access to the construction site for Lock & Dam #3.
II
In Jeanerette, the Supreme Court stated that there are three questions that the courts may determine when the State’s authority to expropriate under the Quick Taking Statute is challenged. They are as follows: (1) whether the property was taken for a highway (or in this instance, waterway) purpose; (2) whether the expropriating agency acted arbitrarily, capriciously, or in bad faith in determining the necessity for the taking; and (3) the adequacy of compensation.
With regard to the second issue, whether or not the Commission acted arbitrarily, capriciously, or in bad faith, the trial court specifically found that the Commission did act arbitrarily and capriciously in seeking to expropriate the property. In reaching its decision, the trial court reasoned that the evidence had established that Hwy. 490 is a hard surface road which provides adequate access to the lock and dam construction site and is able to accommodate large trucks and other heavy equipment which will be needed to construct and thereafter maintain the lock and dam. Accordingly, the trial court held that since a suitable alternative route exists, the Commission acted arbitrarily and capriciously in seeking to expropriate land for the construction of an additional roadway. Considering the established jurisprudence, we must respectfully disagree with the trial court’s finding in this regard.
To begin with, David M. Grouchy, Chief of Staff of the Commission, testified at length with regard to the extensive work done by the Corps of Engineers as well as the Commission. According to Grouchy, who was qualified at trial as an expert in civil engineering, the decision to expropriate the area in question for a roadway was a decision made by the Corps of Engineers and fully concurred in by the Commission. He explained that the limited use of Hwy. 490 was agreed upon because many portions thereof were found to be in substandard condition. With the expected use of large trucks and other heavy equipment, it was felt that the remaining portions of Hwy. 490 would be completely destroyed unless substantial improvements were performed thereon. In fact, Grouchy stated that when Lock & Dam # 1 was constructed, the existing state highway, of a type similar to Hwy. 490, was used in lieu of a separate access road and was totally destroyed during the course of the construction of the lock and dam. Additionally, Grouchy stated that there is a bridge on the unused portion of Hwy. 490 which, according to documents on file with the Department of Transportation & Development, is in a substandard condition and will need to be replaced and/or reconstructed in the near future. Grouchy also testified that other existing routes, such as the so- *909 called Lena Route, were considered and rejected by both the Corps and the Commission. With regard to the Lena Route, Grouchy testified as follows:
“Q. So now I want to talk about your comment that it would cost more. Was there a cost factor considered in the Lena route?
A. Yes, there was.
Q. And how did the Commission arrive at the fact that the cost... .1 think you testified the cost would be excessive, or in excess of what it would be on the chosen access route.
A. The Corps of Engineers did an analysis of what the construction cost would be, and also the engineering and design costs. T.D. Prestridge, who is an engineer under contract to the Red River Waterway Commission, was asked to look at the Lena route, and in fact did so, perhaps even prior to the discussion at the Commission meeting by the postmaster, in order to determine whether that was in fact a superior route. There, among other things, is a bridge crossing that would have to be constructed there that would be quite expensive. And in the_Mr. Prestridge is a registered professional civil engineer with well over forty years experience. In his determination it would also be quite expensive for the rights-of-way. And also he affirmed, and other people affirmed with the Corps of Engineers that it would be a more expensive route overall.”
Grouchy’s testimony was fully corroborated by the testimony of other Commission personnel. Coan Bueche, who preceded Grouchy as chief of staff of the Commission and was involved in the beginning stages of this project, testified as to the reasons why the access road in question was selected and other existing routes were rejected. He also expressed the great concern of both the Corps of Engineers and the Commission that the heavy traffic involved during the construction phase of the project would completely destroy any existing roadways as had occurred when Lock & Dam # 1 was constructed. In discussing why the full use of Hwy. 490 was rejected, he stated the following:
“Q. Now, I gather in fact what has happened with respect to the access road in question, or rather access to Lock and Dam-3, originally it was contemplated that the existing Highway 490 would be used, and then experience at Lock and Dam-1, plus closer examination of the problem, led to the final conclusion that a new permanent upgraded road was required?
A. That’s correct. The GDM that referred to Highway 490, the general design memorandum that referred to Highway 490 as the access road into Lock and Dam-3, is preliminary engineering. It’s hit-the-high-spots type engineering. You come back later and you do detailed engineering to determine what you will actually do. And the GDM did say Highway 490 upon closer examination with detailed study of it, it was found to be inadequate. It’s a substandard highway. And experience at Lock and Dam-1 was clear in everyone’s mind when that study was being made.”
As to the feasibility of using the Lena Route, Bueche stated that this route was studied on two occasions and it was determined that, from a cost standpoint, it would be less expensive to construct the access road in question. He also stated that the fact that the access road was situated along a ridge line was also an important fact discussed during the planning stage. Furthermore, Bueche stated that all things considered, the access road would provide a safer route to the lock and dam site, considering the increased traffic and substandard condition of alternative routes suggested. The testimony of Thomas Prestridge, an engineer retained under contract by the Commission, is also indicative of the extensive research done by the Corps of Engineers and Commission in determining the best available route to the lock and dam site. Prestridge testified that Coan Bueche instructed him to investigate the possibility of using the Lena Route as a means of access to the lock and dam site. After investigating this possibility, he determined that improving the Lena *910 Route would be more expensive than constructing a new access road. He also stated that the Lena Route was longer than the access road in question. As to the possibility of using additional portions of Hwy. 490, Prestridge stated that he found this road to be in deteriorated condition and therefore inadequate.
In State, etc. v. Jeanerette Lumber & Shingle, supra, our Supreme Court stated the following:
“In the present case the defendant failed to allege sufficient facts which, if proven, would demonstrate a gross abuse of discretion by the expropriating authority. In this regard the defendant merely alleged that the Department had failed to avail itself of alternative existing public waterways which could have been used for access to the jobsite with minimum expense and inconvenience. Since the delegation of the power of eminent domain by the State to the expropriator necessarily leaves largely to the latter’s discretion the location and area of land to be taken, defendant’s allegations do not in our opinion set forth specific facts showing that the Department acted arbitrarily, capriciously, or in bad faith. Furthermore, the evidence in the record fails to carry defendant’s heavy burden of proof in this regard. Although we do not necessarily agree that the route selected for the canal and the width of the servitude expropriated reflect ideally the high respect due private property rights by public officers, we nevertheless cannot say the Department’s action was ‘without adequate determining principle or was unreasoned.’ See, United States v. Carmack, 329 U.S. [230] at 243, 67 S.Ct. [252] at 258 [91 L.Ed. 209 (1946)].”
In the instant case, there is a strong factual basis for the decision of the Commission to construct the access road rather than use any of the existing routes noted by the Regards. Furthermore, as noted in Jean-erette, the mere fact that alternative routes exist does not, in and of itself, establish that the Commission acted arbitrarily, capriciously, or in bad faith, and we see no other evidence of record which would support such a finding in the case before us. Accordingly, we find that the trial court erred in dismissing the expropriation proceeding filed by the Commission based upon its finding that the Commission acted arbitrarily and capriciously in seeking to expropriate property for the access road in question.
Ill
Having decided that the Commission is entitled to expropriate the property under the Quick Taking Statute, we must now determine the nature of the title to be taken. Questions such as this relate to the necessity of the taking and, as such, the Commission’s decision will only be set aside if found to be arbitrary, capricious, or in bad faith. Dept, of Transp. & Dev. v. Aswell, 517 So.2d 894 (La.App. 3 Cir.1987). In the instant case, the Commission is seeking full ownership of the property to be used for the access road while the Regards maintain that only a temporary servitude is necessary because road access will not be needed once the construction of Lock & Dam #3 is completed. We disagree. Bueche testified that road access from the south side of the river would not only be needed for construction of Lock & Dam # 3, but would also be needed for maintenance of the lock and dam once completed. For this reason, it was deemed necessary to expropriate the property in full ownership. His testimony in this regard was supported by the testimony of David Grouchy who stated that permanent land access to the lock and dam from the south side of the river was a necessity. We should also point out that our jurisprudence has sanctioned the State’s policy of taking in full ownership rather than a mere servitude because it is sometimes necessary for the State to relocate existing easements on the property taken, something that can be more easily done when the State has acquired the subject property in full ownership. State, Through Dept, of Highways v. Olinkraft, 350 So2d 865 (La. 1977). In view of this, we find that the Commission is entitled to expropriate the property necessary for the access road in full ownership because there is no evidence *911 of record tending to indicate that such decision was arbitrary, capricious, or in bad faith.
In view of the above and foregoing, the judgment of the trial court sustaining the motion to dismiss filed by Daniel and Joseph Regard is reversed. The order of expropriation previously rendered in this proceeding pursuant to R.S. 48:441, et seq., is reinstated in its entirety, and this cause is remanded to the district court for further proceedings consistent herewith.
IV
In view of our decision herein, the trial court’s award of attorney’s fees is vacated and the Regards’ claim for additional attorney’s fees on appeal must also be denied.
Costs of this appeal are to be paid by defendants-appellees, Daniel and Joseph Regard. Costs at the trial level shall await final disposition of this matter.
REVERSED AND REMANDED.
*912 [[Image here]]

. R.S. 34:2309(4)(b) was amended by Acts 1988, #263 § 1, effective July 7, 1988. The amendment did not make any substantive change in this provision.

. R.S. 48:447 was amended by Acts 1988, No. 882, § 1. This amendment is not applicable hereto.