566 So.2d 79 (1990)
RED RIVER WATERWAY COMMISSION
v.
Marjorie M. FREDERICKS, et al.
No. 89-C-1791.
Supreme Court of Louisiana.
July 31, 1990.
*80 Daniel Regard, for Marjorie M. Fredericks, et al., defendant-applicant.
Henry Bruser, III, Randall L. Wilmore, for Red River Waterway Comm., plaintiff-respondent.
LEMMON, Justice.[*]
This is an expropriation action filed by the Red River Waterway Commission, a subdivision of the State, to acquire in full ownership a strip of land across a larger parcel owned by defendants. Certiorari was granted to review the appellate court's reversal of the trial court's finding that the Commission's decision to expropriate defendants' property was arbitrary, capricious and in bad faith.
The construction of Lock & Dam No. 3 was part of an extensive federal-state joint project between the United States Corps of Engineers and the Commission to construct locks and dams along the Red River. Secondary goals of the project were to stabilize the banks of the river, to develop hydroelectric power at the lock and dam sites, and to install recreational facilities in the area. Part of the responsibility of the Commission in the project was to provide servitudes and utility alterations in connection with the project and to pay fifty percent of the cost of, as well as to operate and maintain, any recreational area that may be developed.
The purpose of the expropriation of defendants' property was to acquire a route for building a permanent access road to Lock and Dam No. 3.
In the planning stages of the construction of Lock and Dam No. 3, officials of the Corps and of the Commission met many times, beginning as early as 1984. The Corps, which had previously constructed Lock and Dam Nos. 1 and 2 along the river, outlined its needs for access roads to the site, and investigation was begun of several routes. However, in using an existing substandard road to construct Lock and Dam No. 1, the Commission had encountered many problems when the transportation of building materials and heavy equipment destroyed the road and severely limited access by the local residents to their homes. The Corps and Commission therefore decided to build a modern updated road prior to the beginning of construction of Lock and Dam No. 3.
Access from U.S. Highway 1 on the south was considered along three routes, referred to for purposes of this opinion as the La. Highway 490 route, the Ridge route, and the Lena route. The three *81 routes are shown on the following annotated exhibit:

The first route considered was the Highway 490 route along a public road which provided existing access from Highway 1 to the site. The Commission rejected that route for the following reasons: use of Highway 490 would be unsafe for local residents whose homes were very close to the existing road; the present road was substandard and incapable of supporting the heavy construction traffic and anything more than the existing light residential traffic; the roadway and the servitude were too narrow, and the passing sight distances, the stopping sight distances, the steep grades of the hills, and the vertical curves made the route unsafe for any significant volume of heavy traffic; new servitudes would be required to widen the road *82 and reduce the grades; and a 230-foot bridge was unsafe and had to be replaced. Being anxious to avoid the expense of building bridges along any route selected, the Commission decided to pursue acquiring access along the Ridge route, which was a private road along a ridge line developed and maintained by the owners of the several parcels of land along the route.
After extensive engineering and design work for the Ridge route had been performed, several citizens from the Lena community suggested to the Commission in March, 1986 that the Lena route be considered. The Commission's investigation determined that there was no recorded servitude for the route, which was primarily an overgrown trail across bottom land that was being used only by hunters on all-terrain vehicles. There was also a 600-foot flood plain across Davis Creek which would require a bridge and a large embankment, and a large culvert would be required at another creek. The estimated cost of using the Lena route, although far less than the Highway 490 route, was $208,500 more than the shorter Ridge route. Because of the greater cost, because $140,000 had already been spent on engineering work for the Ridge route, and because a change of routes would cause extensive delays in the overall project (since construction of the road had to be completed prior to commencement of construction of the lock and dam), the Lena route was rejected. Accordingly, the Commission in mid-1986 proceeded with servitude acquisitions along the Ridge route.
In January, 1987, the Corps informed the Commission that final authority and funding had been received for the $165,000,000 Lock and Dam No. 3 project and that permanent servitudes would be required for access roads from both north and south. The Corps indicated that since permanent access roads were needed for project purposes and would be maintained by the federal government, full ownership of the route should be acquired and title subsequently conveyed to the United States.
When the Commission was unsuccessful in negotiations to purchase the property from defendants, the present action was filed pursuant to La.Rev.Stat. 34:2309(4), which authorized the Commission to expropriate property for Lock and Dam Nos. 3, 4 and 5, but not for recreational purposes, by using the expropriation procedure in La. Rev.Stat. 48:441-48:460, the highway quick-taking statute.[1]
After the trial judge signed the order of expropriation, two of the defendants filed a timely motion to vacate the order, contesting among other things the necessity of the taking. The trial court, following a hearing on the motion, ruled that the Commission had acted arbitrarily in determining that the existing Highway 490 servitude was inadequate and that a new route across defendants' property was necessary. The court noted that Highway 490 was a hard-surfaced road of sufficient width to accomodate large trucks and was at that time being used by maximum load trucks in the logging industry. The court concluded that the Commission did not have a reasonable basis for expropriating the proposed route, which was merely a short cut from Highway 1 to a point along Highway 490 closer to the project.
The court of appeal reversed. 546 So.2d 904. Pointing to evidence that it was less expensive to construct a new road across the Ridge route than to improve either of the existing roads so as to provide adequate access, the court held that the Commission's decision was not arbitrary, capricious or in bad faith.
We granted certiorari to consider the issues of (1) the necessity of expropriating a new route across defendants' property when there were existing roadways on either side of the proposed route and (2) the necessity of expropriating anything more than a construction servitude. 551 So.2d 1309.
The highway quick-taking statute, which was patterned after the Federal Declaration *83 of Taking Act, 40 U.S.C. § 258a-e, is applicable to the expropriation procedure in the present case by virtue of La.Rev. Stat. 34:2309(4). Under the highway quick-taking statute there are three issues for determination by the court: (1) whether the property was taken for a highway (or waterway in this case) purpose, (2) whether the expropriating agency acted arbitrarily, capriciously or in bad faith in determining the necessity of the taking, and (3) whether the compensation was adequate.[2]State through Department of Highways v. Jeanerette Lumber & Shingle Co., 350 So.2d 847 (La.1977). Only the second issue is presently before this court.[3]
The question of the necessity of an expropriation lies within the discretion of the Legislature, which may delegate the power of selecting the location and extent of the land to be expropriated to the public agency in charge of the work. The decision of the agency may not be set aside as long as it acts reasonably and in good faith in determining that the taking is necessary. 1A Nichols, The Law of Eminent Domain, § 4.11[3] (J. Sackman rev. 3d ed. 1985).
Questions such as the location of the expropriation, the extent of the property to be taken, the nature of the title to be taken, and the wisdom of pursuing the particular improvement project relate to the issue of the necessity of the taking. M. Dakin & M. Klein, Eminent Domain in Louisiana § 8C (1970). The landowner who contests the necessity of the taking must prove that the legislatively authorized expropriator exercised its discretion arbitrarily, capriciously or in bad faith. State through Department of Highways v. Jeanerette Lumber & Shingle Co., 350 So.2d 847 (La.1977). The standard is whether the expropriator, in selecting the location and extent of the property to be expropriated, acted in bad faith or so capriciously or arbitrarily that its action was without an adequate determining principle or was unreasoned. United States v. Carmack, 329 U.S. 230, 243, 67 S.Ct. 252, 258, 91 L.Ed. 209 (1946). Thus, the landowner attacking the taking must show that the expropriator exercised its large discretion without consideration or adjustment with reference to principles, circumstances or significance. Id. at 243 n. 14, 67 S.Ct. at 258 n. 14. Criteria to be considered by the expropriator include the availability of an alternate route, costs, environmental factors, long-range area planning, and safety considerations. Nichols, supra, at § 411; Hillsborough County v. Sapp, 280 So.2d 443 (Fla. 1973). The expropriating agency may abuse its discretion by acting without considering and weighing the relevant factors, that is, by acting arbitrarily. See Florida Power & Light Co. v. Berman, 429 So.2d 79 (Fla.Dist.Ct.App. 4th Dist.1983); Florida Power Corp. v. Gulf Ridge Council, 385 So.2d 1155 (Fla.Dist.Ct.App. 2d Dist. 1980).
In the present case the Corps and the Commission decided at the outset to construct a new road to current standards, regardless of the route chosen. Because a route already used for a highway was available, it would have been unreasonable for the Commission to expropriate a route across private property if all other things were equal. However, other factors entered into consideration in the Commission's weighing process, such as the significantly greater cost of upgrading the longer available route, the necessity of rebuilding a long bridge, and the safety risk caused by the narrowness of the right-of-way and the sharp and improperly banked curves and inadequate subsurface of the existing route. While we do not necessarily agree with the Commission's decision, especially in the light of the respect due to the ownership of private property, we cannot say that the Commission failed to consider the principles and circumstances involved in *84 the decision or that the decision to expropriate the Ridge route was made arbitrarily, capriously or in bad faith.
The Commission's decision to expropriate the land in full ownership, rather than to take a temporary construction servitude, also presents a troublesome issue. An expropriating authority may abuse its discretion by arbitrarily seeking to acquire land in full ownership when only a construction servitude is needed to fulfill the public purpose. See State through Department of Highways v. Olinkraft, 350 So.2d 865 (La.1977).
At the hearing the Commission's initial evidence showed very little reason for a permanent taking, except the possibility of a marine emergency. Moreover, defendants confronted the Commission's witnesses with the minutes of an August, 1984 meeting at which a Corps official had stated the access road would be strictly for construction purposes, so that the Commission would have the option to acquire a construction servitude, with the land reverting back to the owners after completion of the project, or to acquire the ownership of the land for construction access, after which the road could be incorporated into the state or parish highway system. However, the same minutes noted that a permanent access road from the south would be needed for hydropower development if that part of the project was implemented.[4] Additionally, a consulting electrical engineer on the project testified on rebuttal that permanent access by an upgraded road from the south was needed for the construction, operation and maintenance of a hydroelectric facility, especially in the event of mechanical or electrical failures. He noted that the power generators and power circuit breakers weighed forty to fifty tons and presented significant transportation problems over inferior roads.
The overall evidence thus established that the Corps decision makers, more than two years after one Corps official had expressed his opinion at the August, 1984 preliminary planning meeting about needing only a construction servitude, concluded that federal ownership was necessary for the land on which the modern access road would be constructed. When this and other relevant factors are considered, we cannot say that the Commission's decision to expropriate the land for the access road in full ownership for the construction, operation and maintenance of the lock and dam and later for a hydroelectric plant, was arbitrary, capricious or in bad faith.[5]
Accordingly, the judgment of the court of appeal is affirmed.
WATSON, J. concurs, adding only that much respect must be accorded the expropriating authority's decision.
DENNIS, J. respectfully dissents believing that the trial court correctly determined that the Commission had voted arbitrarily and capriciously because a pre-existing highway provided satisfactory access to the site.
NOTES
[*] Retired Chief Justice John A. Dixon, Jr. participated in this case, having been a member and Chief Justice of this court when the case was orally argued and taken under advisement.
[1] Section 34:2309(14) authorized the Commission to expropriate property to develop hydroelectric power at locks and dams, but did not authorize use of the quick-taking statute for this purpose.
[2] La. Const. art. I, § 4 enables the Legislature to authorize expropriation of property under quick-taking statutes for "public purposes" and not just for highway purposes. State through Department of Highways v. Olinkraft, 350 So.2d 865 (La.1977).
[3] The purpose issue was adequately treated by the court of appeal. The compensation issue has not yet been tried in the district court.
[4] The evidence showed that by the time of the filing of this expropriation suit a license had been issued to the City of New Roads to build a hydroelectric power plant at Lock and Dam No. 3.
[5] The road has now been completed across the Ridge route under the authority of an expropriation order by a federal court, obtained after the district court's judgment in this case. However, this case is not moot. Defendants unsuccessfully challenged the necessity of the taking in the federal court action, and the federal appellate court has not yet reviewed the judgment on the necessity issue.