714 So.2d 706 (1998)
RECREATION AND PARK COMMISSION FOR the PARISH OF EAST BATON ROUGE
v.
C & S DEVELOPMENT, INC.
No. 97-C-2652.
Supreme Court of Louisiana.
July 8, 1998.
TRAYLOR, Justice.[*]
This is an expropriation suit filed by the Recreation and Park Commission for the Parish of East Baton Rouge (BREC) to acquire in full ownership a portion of a larger tract of land owned by defendant. We granted certiorari to review the lower courts' findings that BREC was arbitrary and capricious in selecting the site for a proposed neighborhood park. Finding that BREC adequately considered all relevant criteria, we reverse and remand to the trial court for the determination of the compensation due defendant.

FACTS
BREC, a political subdivision of the State created by legislative act in 1946, has exclusive responsibility for the provision of park and recreation facilities in East Baton Rouge Parish. EAST BATON ROUGE PARISH AND BATON ROUGE, LA., PLAN OF GOVERNMENT § 11.02 (Aug. 12, 1947). In 1988, the voters of East Baton Rouge Parish and Baton Rouge voted to amend the Plan of Government to mandate parish-wide comprehensive planning. The amendment did not change BREC's charge with regard to planning, procuring, developing, and maintaining parks for the Parish and City. The comprehensive plan is called the Horizon Plan, and was adopted by the Metropolitan Council in 1992.
*707 During the development of the Horizon Plan, the Parish and City received input from citizens, consultants, and local government staff. BREC provided essential assistance in the development of one of the seven individual technical reports which comprise much of the final Horizon Planthe Recreation and Open Space Element. This component of the Plan is intended to "provide a framework for the long-range development and enhancement" of the recreation system in East Baton Rouge Parish. Horizon Plan, Recreation and Open Space Element, Executive Summary, p. 4, July 1991. The Recreation and Open Space Element adopts without change BREC planning guidelines as the standard for determining future recreational needs and also recognizes BREC as the agency responsible for land acquisition for public recreation. The 2010 Land Use Plan, a graphic large scale representation of the generalized location and pattern of predominate land use, was adopted by the Metropolitan Council and became effective as part of the Horizon Plan in April 1992.
Through use of its planning guidelines, BREC had first determined the need for a neighborhood park in the vicinity of the site at issue at least as early as 1984 and identified the proposed park in its annual 10 year capital improvement plan at that time. Since then, a proposed park in the area has appeared in each annual BREC capital improvement plan. The Horizon Plan also identifies the need for a proposed park in the area.
Again through use of its planning guidelines, also contained in the Horizon Plan since its adoption, BREC determined that at least 25 acres of level terrain were required in order to accommodate the recreational facilities planned for the proposed park. Between 1982 and the filing of this expropriation suit, BREC examined several locations, giving closest attention to the subject property and eight other sites. After studying the sites, BREC determined that the subject site was best suited for development as a neighborhood park and extended an offer to buy the property from defendant. After defendant refused the offer, BREC filed the instant suit in October 1995.
Although the trial court determined that the expropriation was for a necessary purpose, it held that BREC had abused its discretion because the proximity of the proposed site to probable future industrial development raised safety and environmental concerns, and because two of the alternate sites could be utilized without much additional cost. The Court of Appeal disagreed with the trial court, finding that none of the alternate sites were suitable, but affirmed the decision because BREC's selection of the subject property as a park site was arbitrary and capricious due to BREC's failure to consider safety, environmental, cost, and long-range planning criteria. Recreation and Park Com'n for the Parish of East Baton Rouge v. C & S Development, Inc., 96-1945 (La.App. 1st Cir 9/23/97); 700 So.2d 570.

LAW
When a price cannot be agreed upon with the owner, the state or any of its political subdivisions created to exercise any state governmental powers may expropriate needed property.[1] LA.REV.STAT. 19:2. Accordingly, the expropriating agency must show by a preponderance of the evidence a public need or interest in the expropriation.[2]Greater Baton Rouge Port Com'n v. Watson, 224 La. 136, 68 So.2d 901 (1953).
Once the expropriating agency has met its burden with regard to public need, the burden shifts to the defendant to show that the agency has abused its discretion in selecting the site to be expropriated. Red River Waterway Com'n v. Fredericks, 566 So.2d 79, 83 (La.1990) (citing United State v. Carmack, 329 U.S. 230, 243, 67 S.Ct. 252, 91 L.Ed. 209 (1946)). An expropriating agency abuses its discretion when it acts in bad faith, without adequate determining principles, or without reason. Carmack, 329 U.S. at 243, 67 S.Ct. 252. The criteria by which expropriating agencies should guide themselves include the availability of alternate sites, costs, *708 environmental factors, long-range area planning, and safety considerations. Red River Waterway Com'n, 566 So.2d at 83. An expropriating agency abuses its discretion by acting without considering and weighing the relevant factors. Red River Waterway Com'n, 566 So.2d 79, 83 (1990).

DISCUSSION
The Court of Appeal identified the site's conflict with the land use mandated by the Horizon Plan as the "most serious impediment to the appropriateness of the proposed site." At the time that BREC filed this expropriation suit, in October 1995, the 2010 Land Use Plan identified the location as zoned for either recreational or low density residential uses. Neither of these land uses is incompatible with the creation of a public park. Only after BREC filed suit did the Metropolitan Council amend the 2010 Land Use Plan, on November 15, 1995, to indicate that the proposed site was zoned for light industrial use. It would be difficult for this Court to justify considering information which only became available sometime after an entity acted as evidence of arbitrary and capricious action by that entity. In other words, one may not be held to be arbitrary and capricious for failing to adhere to standards which did not exist at the time he acted.
Further, even if the proposed location of the park conflicted with the Land Use Plan which existed at the time BREC acted, the Horizon Plan provides for amendment to allow zoning variances or changes. In any event, any examination of whether an agency properly considered long range planning does not end with zoning. Here, the record is replete with evidence that BREC considered not only the Horizon Plan's land use plan, but also its Master Street Plan, which contains the locations for proposed streets and roadways, and all available demographic data.
BREC also utilized the planning criteria contained in the Horizon Plan in its determination of the type of park needed. None of the alternate sites contain either the requisite land area to accommodate the planned features of the park, or the desired topography. BREC determined that modification of the topography to allow for construction of the planned features of the park would be too expensive and time consuming.
Although the parent tract is zoned for light industrial use, at present the area around the park site is completely vacant. A park in the proposed location would not cause any environmental risk or raise any safety concerns. Likewise, merely because the surrounding land is zoned light industrial does not presuppose either environmental or safety concerns. Zoning rules allow for park construction in industrial zones. Further, most of the evidence adduced at trial with regard to safety and environment was in relation to an incinerator which the defendant planned to locate near the proposed park. Because the Department of Environmental Quality revoked the permit for the incinerator prior to trial, any concerns relating to the incinerator are minimal. Even were defendant to eventually construct the incinerator, BREC properly considered the environmental factors involved in placing a park next to light industry and determined that any such concerns were negligible.
Even though this Court may not have chosen the proposed site, it is BREC and not the judiciary which is charged with planning, procuring, developing, and maintaining parks for the Parish and City. In the absence of evidence that BREC failed to consider and weigh the applicable criteria or that BREC's conclusions were arbitrary and capricious, the courts may not substitute their judgment for the judgment of those executive agencies to which the decision is statutorily committed.

HOLDING
For the foregoing reasons, we find that the Recreation and Park Commission for the Parish of East Baton Rouge was not arbitrary and capricious in its selection of the proposed park site. We therefore reverse the decisions of the lower courts and remand to the trial court for determination of the compensation due the defendant.
REVERSED, REMANDED.
NOTES
[*] Knoll, J., not on panel. See Rule IV, Part 2, § 3.
[1] BREC's power to expropriate is uncontested.
[2] The trial court's ruling on the issue of necessity was not appealed.