PER CURIAM.
|, At issue is whether the court of appeal erred in holding the district court was manifestly erroneous in finding that a governmental entity proved a sufficient public necessity for expropriating property. For the reasons that follow, we conclude the court of appeal did not properly apply the manifest error standard of review. Accordingly, we reverse the judgment of the court of appeal and reinstate the judgment of the district court.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The Settlement Subdivision in Lafayette was developed in 1979, and contains approximately 158 residential units. It is located near the intersection of two major streets, Kaliste Saloom Road and Ambassador Caffery Parkway. The subdivision has three means of vehicle ingress/egress, all onto Kaliste Saloom Road, and provided for in the original plan.[1] The plan also provided for a right-of-way on a “stub-out” street |2named Homestead Way.[2] In 1991, some of the subdivision’s residents requested the City-Parish abandon the Homestead Way right-of-way. The City-Parish enacted an ordinance in April 1999, abandoning the right-of-way on the ground it was “no longer needed for public purposes.”
In recent years, some residents, including the Settlement Residents’ Association, desired a fourth means of ingress/egress for the subdivision, allowing access to a traffic signal to avoid delays while making a left turn from Old Settlement Road onto Kaliste Saloom Road. In 2007, the City-Parish enacted a new ordinance authorizing the Settlers Trace Extension Project and expropriation of property, reinstating the right-of-way to extend Settlers Trace Boulevard into the subdivision for additional ingress/egress. This ordinance provided that “the construction of the Settlers Trace Extension project [is] a public necessity.” The extension would connect/extend Settlers Trace Boulevard into Old Settlement Road to the Homestead Way right-of-way, and would run, in part, through the property of Jeffery and Sheila Person.
The City-Parish began pursuing the acquisition of servitudes from four different *295 property owners. Three property owners agreed to sell servitudes to the City-Parish, but the Persons refused. On February 10, 2010, the City-Parish filed the present petition to expropriate approximately 2% of the Person’s property under La. R.S. 19:102.[3]
The matter proceeded to a bench trial. The City-Parish presented evidence indicating construction of the extension was necessary, because additional |singress/egress would improve traffic flow and public safety, provide residents with access to a signalized intersection, and provide more options for egress for emergency vehicles when time is important. The Persons presented an expert, who testified there was insufficient documentation to demonstrate the City-Parish engaged in appropriate analytical process to justify the proposed road extension as a public necessity, such as an analysis of traffic volume and crash data.
At the conclusion of trial, the district court rendered judgment in favor of the City-Parish, finding the City-Parish demonstrated by a preponderance of evidence a public need existed for the extension project. The court also found no evidence the City-Parish abused its discretion, or was arbitrary and capricious in choosing the location and extent of the property to be expropriated.
The Persons appealed this judgment. In a divided opinion, the court of appeal reversed the district court’s judgment. Lafayette City-Parish Consol. Government v. Person, 11-888 (La.App. 3 Cir. 12/29/11), — So.3d -. The majority concluded the district court was manifestly erroneous in finding the expropriation was made for public purposes within the meaning of La. Const. Article I, § 4. The dissenting judges concluded the district court’s judgment was not manifestly erroneous, in light of evidence in the record demonstrating the public need for expropriation.
Upon the City-Parish’s application, we granted certiorari to determine the correctness of this ruling. Lafayette City-Parish Consol. Government v. Person, 12-0307 (La.7/13/12), — So.3d -. The sole issue presented for our consideration is whether the district court’s determination was manifestly erroneous, in finding the City-Parish demonstrated by a preponderance of evidence a public need existed for the extension project.
LDISCUSSION
The requirements for expropriation of private property are set forth in Article I, § 4 of the Louisiana Constitution, which provides, in pertinent part:
(A) Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
(B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of *296 ownership to any private person or entity-
(2) As used in Subparagraph (1) of this Paragraph and in Article VI, Section 23 of this Constitution, “public purpose” shall be limited to the following:
(a) A general public right to a definite use of the property.
(b) Continuous public ownership of property dedicated to one or more of the following objectives and uses:
* * *
(ii) Roads, bridges, waterways, access to public waters and lands, and other public transportation, access, and navigational systems available to the general public.
In Exxon Mobil Pipeline Co. v. Union Pacific R. Co., 09-1629 (La.3/16/10), 35 So.3d 192, we set forth the standards for determining whether an expropriation is proper:
As the law now stands, all the expropriator must prove is a public need in the expropriation by a preponderance of the evidence. Recreation and Park Commission for Parish of East Baton Rouge v. C & S Development, Inc., 97-2652, p. 3 (La.7/8/98), 714 So.2d 706, 707 (Knoll, J., not on panel). The extent and location of the property to be expropriated are within the sound discretion of the body possessing the power of eminent domain, and these ^determinations will not be interfered with by the courts if made in good faith. Greater Baton Rouge Port Commission v. Watson, 224 La. 136, 140, 68 So.2d 901, 902 (1953). * * *
In challenges to the necessity of a taking, the landowner must prove that the legislatively-authorized expropriator exercised “its large discretion” arbitrarily, capriciously, or in bad faith. Red River Waterway Com’n v. Fredericks, 566 So.2d 79, 83 (La.1990). Whether the expropriator’s purpose is public and necessary is a judicial determination that will not be reversed on appeal absent manifest error. Calcasieu-Cameron Hosp. Serv. Dist. v. Fontenot, 628 So.2d 75, 78 (La.App. 3d Cir.1993), writ denied, 94-0168 (La.3/18/94), 634 So.2d 854.
In support of its position that there was a public need for the expropriation, the City-Parish presented testimony of its Director of Traffic and Transportation, Tony Tramel, and its Director of Public Works, Tom Carroll, both of whom were accepted by the court as experts in civil engineering. Mr. Carroll testified he recommended the road extension project to the City-Parish Council as a public necessity, based on analysis of traffic data, growth of the surrounding area, and his experience and expertise. He contended the extension and additional ingress/egress would improve traffic flow and public safety, and provide residents with access to a signalized intersection. Mr. Carroll pointed out there would be “more options for egress for emergency vehicles when time is important.” He noted that although the subdivision was originally intended to be a private road subdivision with limited access, the roads and utility rights-of-way were dedicated to public use in 1979. Further, Mr. Carroll stated that from 2003 to 2007, significant development occurred in the area around the subdivision.
Mr. Tramel testified he based his decision to recommend the extension to the City-Parish Council on his experience and expertise, traffic counts, and accident Lreports.[4] Mr. Tramel agreed with Mr. *297 Carroll that the extension serves a public purpose, and would improve traffic flow and public safety. He acknowledged alternatives to the expropriation were considered, such as placing a signal at the intersection of Old Settlement and Kaliste Saloom Road; however, the extension had more advantages, and made better sense. Mr. Tramel also testified raw data existed of traffic counts and accident reports. The last traffic volume report from his department indicated approximately 25,000-30,000 vehicles travel on Kaliste Saloom Road each day. He opined a road is congested when 10,000-15,000 cars per day travel on a two-lane road.
In support of their position that there was no public need, the Persons presented expert testimony from Dr. Douglas Wier-sig, a civil engineer from Texas. Dr. Wiersig concluded there was not sufficient documentation to show Mr. Carroll and Mr. Tramel engaged in appropriate analytical process to justify the proposed road extension as a public necessity, such as an analysis of traffic volume and crash data. He contended there was no information explaining where the fire and police stations were located, or demonstrating how the new road would improve their response times. Dr. Wiersig noted Mr. Trainers conclusion that a traffic signal was not warranted in the area, and opined the off-duty officer directing traffic was a convenience, not a necessity.
After hearing this testimony and receiving other evidence, the district court made a finding the City-Parish proved a public purpose for the expropriation. The trial court found it noteworthy that in reeom-mending the extension, Mr. Carroll | considered the subdivision residents currently were hiring a security officer to direct traffic. The court also noted Mr. Carroll’s testimony that the expropriation would allow “more options for egress for emergency vehicles when time is important.” The district court then pointed to Mr. Tramel’s testimony, and his previous opposition to the abandonment of Homestead Way in 1999, based on his belief it was erroneous from a technical standpoint. The court determined that although the evidence showed “there has been little change in the number of residents of the subdivision,” in recent years “the peripheral area connected by Kaliste Saloom Road has grown substantially.” Further, the court concluded “[tjhere is no evidence that [the City-Parish] abused its discretion or was arbitrarily [sic] and capricious in choosing the location and extent of the property to be expropriated.”
It is well-settled that a reviewing court may not disturb the factual findings of the trier of fact in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1979). In Arceneaux, we set forth a two-part test for the appellate review of facts: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court; and (2) the appellate court must further determine that the record establishes the finding is not clearly *298 wrong or manifestly erroneous. Arceneaux, 365 So.2d at 1383; see also Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993); Sistler, 558 So.2d at 1112.
| sIn the instant case, a review of the testimony of Mr. Tramel and Mr. Carroll reveals there is a reasonable factual basis in the record for the district court’s conclusions. These experts testified the expropriation would allow for additional ingress/egress into the subdivision, which would improve traffic flow and public safety, provide residents with access to a signalized intersection, and provide more options for egress for emergency vehicles. Although the Persons’ expert asserted Mr. Tramel and Mr. Carroll failed to conduct any independent studies to support their conclusions, the record indicates their testimony was based on an analysis of traffic data, an evaluation of the growth of the surrounding area, and their own experience and expertise.[5] An expert may provide testimony based on information obtained from others, and the character of the evidence upon which the expert bases an opinion affects only the weight to be afforded the expert’s conclusion. MSOF Corp. v. Exxon Corp., 04-988 (La.App. 1 Cir. 12/22/05), 934 So.2d 708, writ denied, 06-1669 (La.10/6/06), 938 So.2d 78; State v. Pooler, 96-1794 (La.App. 1st Cir.5/9/97), 696 So.2d 22, 55, writ denied, 97-1470 (La.11/14/97), 703 So.2d 1288. The district court found the testimony of Mr. Tramel and Mr. Carroll was credible, and was supported by objective evidence of traffic flow problems in the area, including evidence that the residents hired a security officer to direct traffic to help residents exit the subdivision. The district court’s findings in this regard are not clearly wrong.[6]
In summary, our review of the record reveals there is a reasonable factual basis for the findings of the district court. The record further establishes the district court’s ^findings are not clearly wrong or manifestly erroneous. The court of appeal erred in finding otherwise. Accordingly, the judgment of the court of appeal must be reversed, and the judgment of the district court must be reinstated.
DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The judgment of the district court is reinstated.

. To exit the subdivision and travel toward Ambassador Caffery Parkway, residents must make a left turn onto Kaliste Saloom Road. Residents hired a security officer to direct traffic on Kaliste Saloom Road at the intersection of Old Settlement Road, to help residents exit the subdivision.

. According to the City-Parish, "stub outs” are common in subdivisions to provide developers with a means to expand the subdivision in the future.

. La. R.S. 19:102 provides, in pertinent part: Where a price cannot be agreed upon with the owner, any municipal corporation of Louisiana may expropriate property whenever such a course is determined to be necessary for the public interest by the governing authority of the municipality.

. Mr. Tramel testified he concluded the extension was a public necessity based on his 39 *297 years of experience, personal observation of the area's traffic congestion, data from the DOTD, engineering observations, traffic data, traffic volume counts, traffic turning counts, accident reports, and crash reports. Mr. Tra-mel said that "with the congestion on Kaliste Saloom Road ever increasing, there's more difficulty all the time for people to get out of this particular subdivision in general. And it seems obvious — intuitively obvious to me that good subdivision transportation planning design give [sic] people choices.” Mr. Tramel noted that while no analysis had been done on the crashes at the intersection, it was his opinion there would be a reduction in total traffic crashes when residents were able to get in and out through the proposed extension.

. In effect, the Persons appear to have raised questions concerning the methodology employed by the City-Parish’s experts. However, it is noteworthy that the Persons failed to challenge the admissibility of the City-Parish’s experts under the standards set forth Daubert v. Merrell Dow Pharm., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)

. Because the court of appeal reversed the district court's judgment based on a finding of no public purpose, it did not address the district court’s finding that the City-Parish did not abuse its discretion, and was not arbitrary and capricious in choosing the location and extent of the property to be expropriated. For the reasons discussed above, we believe the district court’s findings on these issues are supported by the record, and are not manifestly erroneous.